## Morris Emerson v. The State.

### No. 4057. Decided December 2, 1908.

**1.—Burglary—Charge of Court.**

Where upon trial for burglary, the indictment charged burglary with intent to commit the crime of theft, it was reversible error in the court's charge that if the jury believed beyond a reasonable doubt that defendant broke and entered the house by force with intent to commit *felony* or theft to convict him. Following Williams v. State, 108 S. W. Rep., 371.

**2.—Same—Charge of Court—Impeaching Testimony.**

Upon trial for burglary where there was impeaching evidence the court's charge should have limited the same to the purpose for which it was introduced.

**3.—Same—Attorney and Client—Disqualification of Attorney.**

Upon trial for burglary where defendant moved to disqualify one of the State's attorneys because he had been of counsel for the defendant, and the record showed that said attorney had not in fact been employed or secured any confidence of defendant with reference to his defense there was no legal ground for his disqualification.

**4.—Same—Evidence—Contradicting Witness.**

Upon trial for burglary there was no error in permitting the State to introduce evidence contradicting matters testified to by the defendant, to show that his statement was not true.

Appeal from the District Court of Tarrant. Tried below before the Hon. W. T. Simmons.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Buck, Cummings, Doyle & Bouldin,* for appellant.—On question of disqualification of attorney: White's Code Crim. Proc., arts. 30 and 40 and 773; Sutton v. State, 16 Texas Crim. App., 490; Hernandez v. State, 18 Texas Crim. App., 134. On question of introducing contradictory testimony of statements of defendant: Winn v. State, 34 Texas Crim. Rep., 37; Hoy v. State, 39 Texas Crim. Rep., 340; Anderson v. State, 34 Texas Crim. Rep., 546; Lankster v. State, 43 Texas Crim. Rep., 298; 72 S. W. Rep., 388; Dogdell v. State, 63 S. W. Rep., 645. On question of limiting impeaching testimony: Parris v. State, 35 Texas Crim. Rep., 82; Dickey v. State, 27 S. W. Rep., 140. On question of court's charge on felony and theft: Reardon v. State, 4 Texas Crim. App., 602; Arcia v. State, 12 S. W. Rep., 599; Randle v. State, 12 Texas Crim. App., 250; Askey v. State, 15 Texas Crim. App., 558; Lott v. State, 17 Texas Crim. App., 598; Jones v. State, 22 Texas Crim. App., 680; Baker v. State, 25 Texas Crim. App., 1; Miller v. State, 28

Texas Crim. App., 445; Brava v. State, 20 Texas Crim. App.,
189; Serio v. State, 22 Texas Crim. App., 633; Bunting v. State,
15 Texas Crim. App., 485; Weeks v. State, 13 Texas Crim. App.,
466; Sullivan v. State, 13 Texas Crim. App., 462; Haas v. State,
44 Texas, 353; Wilcox v. State, 45 Texas, 146; Williams v. State,
108 S. W. Rep., 371. On question of court's charge on offense not
alleged in indictment: Williams v. State, 8 Texas Crim. App.,
667; Parker v. State, 22 Texas Crim. App., 105; Ham. v. State, 4
Texas Crim. App., 645; Whitcomb v. State, 30 Texas Crim. App.,
269; Mitchell v. State, 38 Texas Crim. Rep., 325; Higgins v. State,
38 Texas Crim. Rep., 539; Russell v. State, 35 Texas Crim. Rep., 8.

*F. J. McCord,* Assistant Attorney-General, for the State.—On ques-
tion of limiting impeaching testimony: Davidson v. State, 22 Texas
Crim. App., 372; Thornley v. State, 36 Texas Crim. Rep., 119; Barton
v. State, 28 Texas Crim. App., 483; Watson v. State, 32 Texas
Crim. Rep., 80; Warren v. State, 33 Texas Crim. Rep., 416.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burg-
lary.

The indictment charged the commission of the offense by force,
threats and fraud. The evidence discloses that the barn of the
alleged owner Nail was entered at night and a saddle, blanket and
bridle was taken. Appellant was seen in possession of the saddle
offering to sell it at Big Springs about 270 miles west of Fort Worth.
The State's theory was, and the evidence tended to sustain the theory,
that this was the saddle taken from Nail's barn in Fort Worth.
Appellant claims to have bought the saddle from a party giving his
name as Gatlin. The case is one purely of circumstantial evidence.
Appellant was in Fort Worth the night of the alleged burglary, and had
been for several days. Appellant had at Big Springs also another
saddle. This he claims to have also bought from Gatlin, and intro-
duces in addition to his own testimony that of the witness Gray
in support of his contention. Failing to sell the saddles at Big
Springs, he expressed them west to El Paso. If appellant's testimony
is correct, the Nail saddle reached Big Springs before appellant did.
The theory of the State was that the saddle was taken Saturday night
and carried west that night or the next day. Appellant's theory is,
which is supported by the evidence of several witnesses, that he did
not leave Fort Smith until Sunday night, and did not carry a saddle
with him, or ship or express it. That the witness Gray accompanied
him from Fort Worth to Big Springs. There is no evidence intro-
duced by the State as to how the saddle was carried from Fort
Worth to Big Springs. Evidently it went on one of the trains of the
Texas & Pacific Railway from Fort Worth to Big Springs, but there
was no evidence introduced to show that appellant had the saddle
on the train, or that he expressed or shipped it by freight. Appellant

was contradicted in regard to some of his statements made while in possession of the saddle at Big Springs. The State's witnesses disagree among themselves as to the description of the party first seen in possession of the saddle at Big Springs; some of them describe appellant fairly well, while others describe a different man, and, in fact, give the same description of the party first seen in possession of the saddle at Big Springs as appellant and Gray gave of Gatlin. The three main facts relied upon by the State then, may be summed up (1) that appellant was in Fort Worth the night the barn was burglarized; (2) that he was seen in possession of the saddle at Big Springs 270 miles away, and (3) he gave conflicting and false accounts as to his possession. He introduced several witnesses to prove that on the night the barn was burglarized he slept in the residence of one Young, and in the bed with Young, and did not leave the house during the entire night. That he did not leave Fort Worth in time to reach Big Springs at the time the saddle was first seen in Big Springs, and that he purchased this and another saddle from Gatlin. There was quite a lot of impeaching testimony introduced attacking one or two of appellant's witnesses, especially Mrs. Young.

The indictment charged burglary with intent to commit the crime of theft. The court gave the general definition of burglary with intent to commit a felony or the crime of theft, and in applying the law to the case he instructed the jury that if they should believe beyond a reasonable doubt that appellant broke and entered the house by force with intent to commit *a felony or theft,* they should convict. This character of charge, under this particular form of indictment, has been condemned in many cases: among the later cases decided by this court is that of Williams v. State, 53 Texas Crim. Rep., 2; 108 S. W. Rep., 371. This case collates quite a number of authorities. The exception to the charge was that the jury were authorized to convict appellant if he was found guilty of entering the house, and his purpose was to commit any felony or with intent to commit theft. There was no allegation in the indictment with reference to committing any felony, the intent of the burglary being alleged to commit only the crime of theft. The rule is universal and has been emphasized frequently by Appellate Courts, and in a great number of cases by the Appellate Courts of this State, that the charge must be limited to the allegations in the indictment. A jury would not be authorized to convict appellant of any other offense than that specifically charged, and the court should confine the consideration of the jury in the charge to the allegation contained in the indictment. We are of opinion that this phase of the charge was erroneous.

Exception was also reserved to the charge because it failed to limit and restrict the impeaching evidence to the purpose for which it was introduced. Upon another trial the court should so instruct the jury.

There was a motion made to "disqualify" one of the attorneys

representing the State, because it was alleged he had been of counsel for the defendant, or at least had discussed this case with appellant with a view of employment to such an extent that he should not have been permitted to appear in the case for the prosecution. Without going into a discussion of this question, we are of opinion the facts do not sufficiently show that the counsel mentioned had been employed by appellant, or placed in such relation to the case as to disqualify him from representing the State. He had not accepted a fee as private prosecutor, and was only assisting the county attorney in the prosecution of some cases on account of the absence of one of the county attorney's assistants. The conversation occurring between the attorney mentioned and appellant was one of a casual sort, counsel being at the jail to see one of his clients, and appellant wished to employ him, and counsel discussed the matter with appellant to some extent in order to ascertain what his fee would be in case of employment, not having secured any confidence of appellant with reference to his defense. This ended the matter. Appellant employed other counsel, and there was nothing further said between them in regard to it. We are, therefore, of opinion that the matter had hardly progressed enough to disqualify counsel in the matter.

There are several objections to the testimony as to the statements of appellant at Big Springs as well as the introduction of some evidence contradicting matters testified by appellant in regard to an automobile ride from Big Springs to the town of Post, something like one hundred miles off the railroad from Big Springs. We are of opinion this evidence was admissible. Appellant had introduced before the jury evidence in regard to his trip to this particular town. The State sought, by cross-examination of himself, to show that the story of this visit was not true, and in support of their theory of its falsity introduced evidence contradictory of his description of the town and the topography of the country over which he traveled to the little town.

For the error discussed we are of opinion that the judgment should be reversed and the cause remanded, and it is accordingly so ordered.

*Reversed and remanded.*