NUMBER 13-03-698-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






ORLANDO SANCHEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 332nd District Court of Hidalgo County, Texas.






O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Baird (1)


 Opinion by Justice Baird


 Appellant was charged by indictment with the offense of murder. A jury convicted
appellant of that offense and the trial judge assessed punishment at sixty-eight years
confinement in the Texas Department of Criminal Justice-Institutional Division. Appellant
raises four points of error. We sustain the fourth point and reverse the judgment of the trial
court.

I. Sufficiency Challenges.

 The first and second points of error challenge the legal and factual sufficiency of the
evidence to support the jury's verdict.

A. Standards of Appellate Review.

 Legal sufficiency is the constitutional minimum required by the Due Process Clause
of the Fourteenth Amendment to sustain a criminal conviction. Jackson v. Virginia, 443
U.S. 307, 315-16 (1979). The appellate standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Id. at 320. The evidence is examined in the light
most favorable to the fact-finder. Id. A successful legal sufficiency challenge will result in
the rendition of an acquittal by the reviewing court. Tibbs v. Florida, 457 U.S. 31, 41-42
(1982).

 In a factual sufficiency review, the appellate court views all of the evidence in a
neutral light and ask whether a jury was rationally justified in finding guilt beyond a
reasonable doubt. Watson v. State, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040,
2006 WL 2956272, at *7 (Tex. Crim. App. Oct. 18, 2006). To reverse a case on a factual
sufficiency challenge, the court must be able to say, with some objective basis in the
record, that the great weight and preponderance of evidence contradicts the jury's verdict.
Id. at *8. In other words, an appellate court cannot conclude a conviction is "clearly wrong"
or "manifestly unjust" simply because its judges would have voted to acquit. Id. In
examining a factual sufficiency challenge, the court must defer to the fact-finder's credibility
determinations. Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

B. Factual Summary.

 Appellant and the decedent had been engaged, but their engagement ended without
the couple getting married. The two began seeing each other again. The decedent was
telephoned by appellant, who said he needed a ride because his vehicle was not working. 
The decedent left her home to assist appellant.

 A resident in a Weslaco motel heard a woman screaming in a nearby room. That
resident contacted peace officers and informed them of the screams. Those officers
entered a motel room and saw both appellant and the decedent laying on the floor. A stun
gun was on the floor near appellant. The windows to the room were painted shut, there
was only one door entering the room, and that door had been barricaded by a heavy piece
of furniture.

 The decedent was pronounced dead at the scene. Appellant was transported to a
nearby hospital and arrested for the murder of the decedent a short time later.

 The indictment alleged the offense of murder in four separate paragraphs that
appellant: (1) intentionally or knowingly choked the decedent by hand; (2) intentionally or
knowingly caused the death by manner and means unknown to the grand jury; (3)
intending to cause serious bodily injury, committed an act clearly dangerous to human life,
to wit: placed a stun gun to the decedent; and, (4) intending to cause serious bodily injury,
committed an act clearly dangerous to human life, to wit: by manner and means unknown
to the grand jury. These paragraphs allege two of the three ways of committing murder in
Texas. Under the penal code, "a person commits an offense if he (1) intentionally or
knowingly causes the death of an individual, or (2) intends to cause serious bodily injury
and commits an act clearly dangerous to human life that causes the death of an individual." 
Tex. Pen. Code Ann. § 19.02(b)(1) & (2) (Vernon 2003). 

 Dr. Fulgencio Salinas, the laboratory director at Edinburg Regional Medical Center,
performed the autopsy of the decedent and testified in court. He described bruising,
scratches and lacerations to the decedent's body. Some of those injuries were consistent
with a stun gun being triggered after contact with the decedent's skin. Dr. Salinas opined
that the cause of death was asphyxia, meaning a lack of oxygen to the brain. Dr. Salinas
concluded that the asphyxia was caused either by choking or being stunned by the stun
gun. Specifically, he stated that bruising to the decedent's neck could have been caused
by either a male hand squeezing the neck or use of the stun gun. (2) 

C. Argument and Analysis.

 Appellant contends the evidence is legally and factually insufficient to prove (1) the
specific intent to cause death; (2) the cause of death was by choking with appellant's
hands; (3) the intent to cause serious bodily injury; and, (4) the stun gun was the cause
of death. These arguments are directed toward the first and third paragraphs of the
indictment, both of which were submitted to the jury. 

 When alternate theories of committing the same offense are submitted to the jury
and the jury returns a general verdict, the conviction will be upheld if the evidence is
sufficient to support a finding of guilt under any one of the theories submitted. Griffin v.
United States, 502 U.S. 46, 56-58 (1991) ("a general verdict [is] valid so long as it is legally
supportable on one of the submitted grounds-even though that gives no assurance that
a valid ground, rather than an invalid one, is actually the basis for the jury's action"); Turner
v. United States, 396 U.S. 398, 420 (1970) ("[When] a jury returns a guilty verdict on an
indictment charging several acts in the conjunctive . . . the verdict stands if the evidence
is sufficient with respect to any one of the acts charged"); Rabbani v. State, 847 S.W.2d
555, 558 (Tex. Crim. App. 1992); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.
1991); Adams v. State, 180 S.W.3d 386, 417 (Tex. App.-Corpus Christi 2005, no pet.). 
Therefore, if we find the evidence legally and factually sufficient to support a conviction for
the offense alleged in the first paragraph of the indictment, our inquiry is complete.

 In homicide prosecutions, the defendant's state of mind is a question of fact that
must be determined by the jury. Smith v. State, 965 S.W.2d 509 (Tex. Crim. App. 1998).
The intent to kill cannot be presumed as a matter of law, but may be inferred from any facts
in evidence which prove the intent to kill, such as the use of a deadly weapon. Hall v.
State, 418 S.W.2d 810, 812 (Tex. Crim. App. 1967). The question is whether a rational
trier of fact could have found the intent to kill from the following facts: (1) appellant lured
the decedent from her house under the guise that he needed transportation; (2) the two
then traveled to a motel and entered a room registered in appellant's name; (3) once there,
a heavy piece of furniture was placed in front of the door to block the room's only entrance;
(4) a stun gun box was found in appellant's truck and the gun from that box was found in
the motel room and used on the decedent; (5) a resident at the motel heard a female
scream, "You're going to kill me;" and, (6) the decedent sustained many instances of
trauma to her body. When these facts are examined in the light most favorable to the
jury's verdict, we find the evidence legally sufficient to prove the intent to kill.

 We next consider whether the evidence was sufficient to prove the cause of death
was by choking with appellant's hands. When Dr. Salinas's testimony that the decedent's
death from asphyxia resulted from strangulation, which could have been caused by a male
hand squeezing the decedent's neck, is viewed in the light most favorable to the jury's
verdict, we find the evidence legally sufficient to support a rational finding that the decedent
died from being choked by appellant's hands.

 Further, when all of the evidence is viewed in a neutral light, we find that the jury
was rationally justified in finding both the intent and causation elements beyond a
reasonable doubt. Watson, 2006 Tex. Crim. App. LEXIS 2040, *7. In other words, we find
no evidence in the record from which we can derive an objective basis that contradicts the
jury's verdict. Id. at *8.

 Accordingly, we hold the evidence is both legally and factually sufficient to prove
appellant had the specific intent to cause the decedent's death and that she met her death
by choking at the hands of appellant. Having found the evidence sufficient to support the
allegations in the first paragraph of the indictment, we need not address appellant's
arguments challenging the sufficiency of the evidence to support the allegations in the third
paragraph. The first and second points of error are overruled.

II. The Jury Charge.

 The fourth point of error contends the trial judge erred in submitting to the jury the
allegations in the second and fourth paragraphs of the indictment. Those paragraphs
alleged the manner and means of causing the decedent's death was unknown to the grand
jury. At the conclusion of the State's case-in-chief, appellant moved for an instructed
verdict of acquittal on these paragraphs, contending there was no evidence to support the
allegation that the cause of death was unknown to the grand jury. The trial judge denied
those motions. Appellant then objected to the charge authorizing the jury to convict on
those allegations. The trial judge overruled the objections, submitted those allegations,
and the jury returned a general verdict of guilty.

A. Authorizing an Improper Conviction.

 There are two broad scenarios in which a trial judge commits charge error when
authorizing a conviction based upon multiple theories of committing the same offense. 
Griffin v. United States, 502 U.S. 46, 59-60. The first scenario arises when the trial judge
authorizes the jury to convict under a theory that is not legally permissible. For example,
in Stromberg v. California, 283 U.S. 359 (1931), the defendant was charged in a single
count indictment of violating a California statute prohibiting the display of a red flag in a
public place for any one of three reasons: (1) as a symbol of opposition to organized
government; (2) as an invitation to anarchistic action; or, (3) as an aid to seditious
propaganda. Id. at 361. The general verdict permitted the jury to convict if it found the
defendant guilty of displaying the flag for any of the three reasons. Id. at 363-64. The
California appellate court upheld the conviction on the ground that even though the first
purpose was unconstitutional, the remaining reasons were constitutional. The Stromberg
Court disagreed, holding that where the jury was authorized to convict on several theories,
but one of those theories was unconstitutional, the jury's verdict must be set aside. Id. at
368.

 This scenario also encompasses cases where the trial judge authorizes the jury to
convict on a theory not alleged in the indictment. Stated differently, a trial judge should not
permit a jury to convict on a theory not specifically alleged in the charging instrument and,
as a corollary, the court should confine the jury to the allegations contained in the
indictment. Castillo v. State, 7 S.W.3d 253, 258 (Tex. App.-Austin 1999, pet. ref'd) (citing
Emerson v. State, 54 Tex. Crim. 628, 114 S.W. 834, 835 (1908); and quoting Moore v.
State, 84 Tex. Crim. 256, 206 S.W. 683, 684 (Tex. Crim. App.1918) ("It is fundamentally
wrong to authorize a conviction on any state of facts other than those which support the
finding of the truth of the indictment.")). For example, in Rodriguez v. State, 18 S.W.3d
228 (Tex. Crim. App. 2000), the defendant was charged with driving while intoxicated, "by
the reason of the introduction of alcohol into his body." (3) See id. at 229. Testimony at trial
showed the defendant was taking cold medication at the time of the alleged offense. Id. 
The trial judge permitted the jury to convict upon finding the defendant was intoxicated by
"alcohol, a drug, or a combination of both of those substances, into the body." Id. The
Texas Court of Criminal Appeals reversed, holding the trial judge erred in authorizing the
jury to base a conviction on a theory of intoxication not alleged in the charging instrument. 
Id. at 232.

 The second scenario arises when the trial judge authorizes the jury to convict on a
theory of conviction that is legally permissible, but there is insufficient evidence to support
a conviction under that theory. When the evidence is insufficient to support a conviction,
the trial judge should eliminate that theory of conviction from the jury's consideration and
not include it in the charge. Griffin, 502 U.S. at 60; Payne v. State, 194 S.W.3d 689, 698
((Tex. App.-Houston [14th Dist.] 2006, pet. ref'd). For example, in Guevara v. State, 191
S.W.3d 203 (Tex. App.-San Antonio 2005, pet. ref'd), the defendant was charged with
murdering his wife. See id. at 207-08. The trial judge authorized the jury to convict the
defendant under either section 7.02(a)(2) of the penal code, aiding another's commission
of the offense, or section 7.02(a)(3), not discharging his legal duty to make a reasonable
effort to prevent commission of the offense. Id. However, there was no evidence to
support the legal duty theory. Id. Therefore, the trial judge erred in authorizing a
conviction under that theory. Id. 

 In the instant case, the first scenario is not implicated because alleging the manner
and means of causing the death is a legal way of charging the offense of murder. Matson
v. State, 819 S.W.2d 839, 848 (Tex. Crim. App. 1991). However, the second scenario is
implicated because appellant contends the evidence was insufficient to warrant an
instruction authorizing the jury to convict him under that theory. Therefore, we will now
determine whether the trial evidence was sufficient to warrant a charge on the theories
alleged in the second and fourth paragraphs of the indictment.

B. Alleging Manner and Means Unknown.

 Alleging that some aspect of the case is "unknown" is neither new or unique. For
example, many theft indictments allege the defendant received stolen property from an
"unknown" person. See, e.g., Payne v. State, 487 S.W.2d 71, 72 (Tex. Crim. App. 1972). 
In murder cases, the cause of death is usually not in question. However, in cases where
the cause of death cannot be conclusively established, it is not uncommon for the
indictment to allege a primary cause of death and, in the alternative, to allege that the
death was caused by manner and means unknown to the grand jury.

 When the indictment alleges the cause of death in this manner, the State bears the
burden of proving the "unknown" allegation. The State carries that burden in either of two
ways: (1) if the trial testimony does not establish the cause of death, a prima facie showing
is made that the cause of death was unknown to the grand jury; and (2) when the trial
testimony does establish the cause of death, the State must prove that the grand jury used
due diligence in attempting to ascertain the cause of death. Hicks v. State, 860 S.W.2d
419, 424 (Tex. Crim. App. 1993). The burden in the second scenario is usually discharged
by calling a member of the grand jury to describe what actions the grand jury undertook to
determine the cause of death.

 In the instant case, Dr. Salinas testified that the decedent's death was caused either
by choking by hand or use of the stun gun. He did not provide any alternate theory or
testify that the cause of death was unknown. Therefore, the trial testimony established the
cause of death. (4) Consequently, the State was required to prove that the grand jury used
due diligence in attempting to ascertain the cause of death. However, the State offered
no evidence whatsoever on this subject. Therefore, there was insufficient evidence to
support the theories of prosecution alleged in the second and fourth paragraphs of the
indictment. See id. Consequently, the trial judge erred in authorizing the jury to convict
appellant under those theories of prosecution.

D. What Type of Harm Analysis is Applicable?

 Having found error, we must now determine whether the error was harmful. The
State contends the error, if any, is harmless when evaluated under the standard
announced in Malik, infra, and its progeny dealing with an "unknown" allegation. In Malik
v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997), the Texas Court of Criminal Appeals
significantly altered the standard of appellate review for sufficiency challenges; Malik held
that the sufficiency of the evidence is measured by the elements of the offense as defined
by the hypothetically correct jury charge. Id. at 240. Two years later, in Rosales v. State,
4 S.W.3d 228, 231 (Tex. Crim. App. 1999), the court held that in light of Malik, "the rule in
cases like Hicks is no longer viable." And two years after Rosales, the court held a
hypothetically correct jury charge need not incorporate allegations that give rise to
immaterial variances. Gollihar v. State, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). A
non-essential element allegation, such as an allegation that the object used to cause injury
was unknown to the grand jury, may properly be excluded from a hypothetically correct
charge. Id. at 252-53. In other words, what was considered a material variance in Hicks
is now an immaterial variance after Rosales and Gollihar and, therefore, need not be
included in a hypothetically correct jury charge. Gollihar, 46 S.W.3d at 256. This line of
reasoning was followed by this court in Rose v. State, 76 S.W.3d 573, 574 (Tex.
App.-Corpus Christi 2002, no pet.), and more recently in In re A.J.G., 131 S.W.3d 687,
694 (Tex. App.-Corpus Christi 2004, pet. denied). Indeed, the State cites A.J.G. in support
of its argument that the instant error was harmless. (5)

 Certainly, we acknowledge that the rule in Hicks has been altered by Malik and its
progeny. Nevertheless, we believe the State's reliance on those cases is misplaced
because those cases dealt with, and were limited to, the standard of appellate review to
be employed when resolving challenges to the sufficiency of the evidence to support the
conviction. (6)
 The Malik Court made it clear that its "new rule" was limited to sufficiency
challenges and acquittals resulting from such a successful challenge: "[T]he standard we
formulate today ensures that a judgment of acquittal is reserved for those situations in
which there is an actual failure in the State's proof of the crime rather than mere error in
the jury charge submitted." Malik, 953 S.W.2d at 240.

 However, in the instant point of error, appellant does not challenge the sufficiency
of the evidence to support his conviction on the second and fourth paragraphs of the
indictment; rather, that challenge was made in the first and second points of error. Instead,
this point raises the issue of jury charge error, which requires a new trial rather than an
acquittal. This case is, therefore, indistinguishable from Guevara, where the trial court
erroneously authorized the jury to convict under penal code section 7.02(a)(3) even though
there was no evidence to support that theory of prosecution. See Guevara, 191 S.W.3d
at 207-08. The Texas Court of Criminal Appeals held that article 36.19 of the code of
criminal procedure dictated the appropriate harm analysis. Guevara v. State, 152 S.W.3d
45, 54 (Tex. Crim. App. 2004). The Court of Criminal Appeals did not rely upon or even
cite Malik in its opinion because Malik has no place in a charge error harm analysis.

 Having determined that the appropriate standard for gauging harm is article 36.19,
the next issue is what degree of harm is required for reversal. That issue is determined by
whether the error was preserved for appellate review. Hutch v. State, 922 S.W.2d 166,
170-71 (Tex. Crim. App. 1996). Preserved error warrants reversal if appellant suffered
"any harm, regardless of degree." Id. (citing Arline v. State, 721 S.W.2d 348, 351 (Tex.
Crim. App. 1986)). In the instant case, the error was preserved by appellant's timely
objection.

 In assessing whether "any harm" had been suffered, the reviewing court may
consider 1) the charge, 2) the state of the evidence, including contested issues, 3) the
argument of counsel, and 4) any other relevant information revealed by the record. Hutch,
922 S.W.2d at 171. We will consider those factors seriatim.

 First, the charge authorized the jury to return a general verdict of guilt under the four
theories of murder alleged in the indictment; however, two of those theories were not
supported by the evidence. The Hutch Court found it important that the error, as in this
case, occurred in the application paragraph, that portion of the charge which authorizes the
jury to act, rather than in some abstract portion of the charge. Id. at 172. 

 The second factor asks if the jury charge error related to a contested issue. Id. at
173. The facts recounted in part I, supra, establish the state of the evidence-the decedent
was killed in a motel room occupied only by herself and appellant. From these facts, it is
fair to say that cause of death was the only contested issue during trial. (7) From the outset,
both lawyers recognized that the cause of death was the critical issue and discussed it
during their opening statements. The prosecutor stated:

 When you hear that your decision has to be unanimous, what we're talking
about is that he murdered her. That has to be unanimous. How he did it
does not have to be unanimous. That's why it's plead in so many different
ways. And if you're just not sure how it happened there is a paragraph for
that too. Because the Grand Jurors said it's possible that we don't know
what happened, but we do know that he murdered her. We will get into that
more in detail when we do the Charge of the Court and this jury can see the
charge. You will hear the different language of what you need to select but
either way, whether he murdered her with a stun gun, with his bare hands
face to face or cold-bloodied killing or someone (sic) that we don't know how
he murdered her, the whole point is that he murdered her. 


Defense counsel stated: "The evidence will show that the doctor himself doesn't know
what caused the victim's death, but he is speculating by saying she was strangled . . . . In
other words, our position is going to be that the doctor may not know but he is guessing,
well, maybe it happened this way, okay." 

 The third factor involves review of the closing arguments. These arguments mirror
the opening statements. In his closing argument, the prosecutor stated:

 The second page [the page containing the error] is going to be, I guess, one
of the more important pages. Detailing the four individual paragraphs that
we set out in discussing with you in the indictment. ... That he choked her
with his hand. Now, it's become an issue in this case as to how this woman
died. I believe defense counsel has made this a very big issue as to how
she died and how the doctor reached his conclusion as to what the cause of
death was. Now, you heard Doctor Salinas ... talking about the cause of
death. That it was asphyxia, in his opinion, by strangulation or which he says
is another way of saying choking.


* * * * *


 And then the whole X factor in this case was the stun gun. And that's
the whole point of pleading in the alternative. That's the way you say it when
there is one, two, three, four different versions of how this murder occurred. 
What you need to understand is that the doctor said it was 95 percent
certainty that she died from choking but that there was a slight possibility that
she may have died from the stun gun . . . .


 And the whole point of this is there is the word here, that you will see
on page two, "or" by choking , or by being killed by the stun gun or by some
unknown manner that we just don't know. ... As I said yesterday [during his
opening statement], what we need to be is unanimous in that he murdered
her. The way it happened does not need to be unanimous. You could have
three of you picking each one of these paragraphs. The whole point is that
the 12 of you agree that he murdered her. And that's specifically what this
language is all about. 


Defense counsel argued as follows:

 "[Y]ou remember the testimony of one of [Dr. Salinas'] associates, and
that was Mr. Pena, he indicated that the doctor told him, hey, this is a difficult
case. I can't determine the cause of death . . . . Even Doctor Salinas
indicated, when I cross-examined him, that it was very difficult for him in
these type of cases to determine the cause of death. 


*****


 And there is a question also, in my opinion -- in my opinion, as to what
is the cause of death. I really do believe that. And in talking to the doctor
yesterday and asking him questions, the doctor did indicate that it was one
of the more difficult cases for him. But I think the doctor - in analyzing the
whole situation, I think the doctor at the last minute decided to put the cause
of death by strangulation. 


 The fourth factor asks us to consider any other relevant information revealed by the
record. The most striking revelation is that the charge error wholly undermined the
defensive theory, i.e., the State's failure to prove cause of death. Under the erroneous
charge, the jury could have rejected Dr. Salinas's conclusions that the decedent died either
from choking or the stun gun, thereby accepting the defensive theory that a precise cause
of death was not proven, yet was still authorized to convict. In other words, the jury could
have taken the position that the cause of death was not proven to be either from choking
or the stun gun but, having taken that position, the jury would have necessarily found that
the manner and means of causing the death was unknown to the grand jury. 
Consequently, the erroneous charge deprived appellant of the ability to successfully argue
his specific defensive theory and deprived the jury of the opportunity to accept and give
effect to that argument.

 In view of these four factors, each militating toward harming appellant, we find
appellant suffered, at a minimum, "some harm" from the trial judge authorizing the
conviction of appellant on theories not supported by the evidence. (8)
 Accordingly, we
sustain the fourth point of error.

 The judgment of the trial court is reversed and the case remanded for a new trial.




 CHARLES BAIRD,

 Justice



Publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this the 15th day of March, 2007.

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to the government code. See Tex. Gov't Code Ann. §
74.003 (Vernon 2005).
2. On cross-examination, Dr. Salinas testified that "asphyxia by strangulation" was "obvious" and the
strangulation was done manually, or by hand. 
3. All emphasis is supplied unless otherwise indicated.
4. The State disagrees with this conclusion, arguing the manner and means appellant employed to kill
the decedent was not conclusively established and therefore, under Hicks, a prima facie showing was made
that the manner and means was unknown to the grand jury. However, the record evidence does not support
this argument. To the contrary, Dr. Salinas repeatedly testified the decedent's death was caused either by
choking or the stun gun. The certainty of Dr. Salinas's testimony was referred to by the State in its closing
argument: "What you need to understand is that the doctor said it was 95 percent certainty that she died from
choking but that there was a slight possibility that she may have died from the stun gun." 
5. Specifically, the State quotes that opinion, which dealt with a murder prosecution, for the proposition
that "The State was under no further obligation to prove that the grand jury used good faith and due diligence
in determining the identity of the murder weapon when it produced the disjunctive indictment that described
the offense as being committed either 'with a razor blade' or 'with a sharp object to the Grand Jurors
unknown.'" In re A.J.G., 131 S.W.3d 687, 695 (Tex. App.-Corpus Christi 2004, pet. denied).

6. For example, in A.J.G., the court specifically stated it was applying Malik to the defendant's
sufficiency challenge. In re A.J.G., 131 S.W.3d at 694 ("We apply the Malik standard of the hypothetically
correct jury charge in sufficiency challenges to the present appeal despite its nature as a juvenile
proceeding."). Accordingly, the quotation from A.J.G. relied upon by the State in the preceding footnote was
necessarily limited to sufficiency challenges.

7. This conclusion is borne out by the State's closing argument, where the prosecutor stated: "[I]t's
become an issue in this case as to how this woman died. I believe defense counsel has made this a very big
issue as to how she died and how the doctor reached his conclusion as to what the cause of death was."
8. We say "at a minimum" because the harm in the instant case is as bad as that in Guevara which the
San Antonio Court found to be egregious. Guevara, 191 S.W.3d at 209.