**Orlando SANCHEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–03–698–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 15, 2007.

Rehearing Overruled April 26, 2007.

Mark Alexander, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Edinburg, for appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and BAIRD.[1]

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* Tex. Gov't Code Ann. § 74.003 (Vernon 2005).

## OPINION

Opinion by Justice BAIRD.

Appellant was charged by indictment with the offense of murder. A jury convicted appellant of that offense and the trial judge assessed punishment at sixty-eight years confinement in the Texas Department of Criminal Justice–Institutional Division. Appellant raises four points of error. We sustain the fourth point and reverse the judgment of the trial court.

### I. Sufficiency Challenges.

The first and second points of error challenge the legal and factual sufficiency of the evidence to support the jury's verdict.

### A. Standards of Appellate Review.

■ Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 320, 99 S.Ct. 2781. The evidence is examined in the light most favorable to the fact-finder. *Id.* A successful legal sufficiency challenge will result in the rendition of an acquittal by the reviewing court. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

■ In a factual sufficiency review, the appellate court views all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 412 (Tex.Crim.App., 2006). To reverse a case on a factual sufficiency challenge, the court must be able to say, with some objective basis in the record, that the great weight and preponderance of evidence contradicts the jury's verdict. *Id.* at 414. In other words, an appellate court cannot conclude a conviction is "clearly wrong" or "manifestly unjust" simply because its judges would have voted to acquit. *Id.* In examining a factual sufficiency challenge, the court must defer to the fact-finder's credibility determinations. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex.Crim.App.2003).

### B. Factual Summary.

Appellant and the decedent had been engaged, but their engagement ended without the couple getting married. The two began seeing each other again. The decedent was telephoned by appellant, who said he needed a ride because his vehicle was not working. The decedent left her home to assist appellant.

A resident in a Weslaco motel heard a woman screaming in a nearby room. That resident contacted peace officers and informed them of the screams. Those officers entered a motel room and saw both appellant and the decedent laying on the floor. A stun gun was on the floor near appellant. The windows to the room were painted shut, there was only one door entering the room, and that door had been barricaded by a heavy piece of furniture.

The decedent was pronounced dead at the scene. Appellant was transported to a nearby hospital and arrested for the murder of the decedent a short time later.

The indictment alleged the offense of murder in four separate paragraphs that appellant: (1) intentionally or knowingly choked the decedent by hand; (2) intentionally or knowingly caused the death by manner and means unknown to the grand jury; (3) intending to cause serious bodily injury, committed an act clearly dangerous

to human life, to wit: placed a stun gun to the decedent; and, (4) intending to cause serious bodily injury, committed an act clearly dangerous to human life, to wit: by manner and means unknown to the grand jury. These paragraphs allege two of the three ways of committing murder in Texas. Under the penal code, "a person commits an offense if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Pen.Code Ann. § 19.02(b)(1) & (2) (Vernon 2003).

Dr. Fulgencio Salinas, the laboratory director at Edinburg Regional Medical Center, performed the autopsy of the decedent and testified in court. He described bruising, scratches and lacerations to the decedent's body. Some of those injuries were consistent with a stun gun being triggered after contact with the decedent's skin. Dr. Salinas opined that the cause of death was asphyxia, meaning a lack of oxygen to the brain. Dr. Salinas concluded that the asphyxia was caused either by choking or being stunned by the stun gun. Specifically, he stated that bruising to the decedent's neck could have been caused by either a male hand squeezing the neck or use of the stun gun.[2]

### C. Argument and Analysis.

■ Appellant contends the evidence is legally and factually insufficient to prove (1) the specific intent to cause death; (2) the cause of death was by choking with appellant's hands; (3) the intent to cause serious bodily injury; and, (4) the stun gun was the cause of death. These arguments are directed toward the first and third paragraphs of the indictment, both of which were submitted to the jury.

■ When alternate theories of committing the same offense are submitted to the jury and the jury returns a general verdict, the conviction will be upheld if the evidence is sufficient to support a finding of guilt under any one of the theories submitted. *Griffin v. United States,* 502 U.S. 46, 56–58, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) ("a general verdict [is] valid so long as it is legally supportable on one of the submitted grounds-even though that gives no assurance that a valid ground, rather than an invalid one, is actually the basis for the jury's action"); *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) ("[When] a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged"); *Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim.App.1992); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Adams v. State,* 180 S.W.3d 386, 417 (Tex.App.-Corpus Christi 2005, no pet.). Therefore, if we find the evidence legally and factually sufficient to support a conviction for the offense alleged in the first paragraph of the indictment, our inquiry is complete.

■ In homicide prosecutions, the defendant's state of mind is a question of fact that must be determined by the jury. *Smith v. State,* 965 S.W.2d 509 (Tex.Crim. App.1998). The intent to kill cannot be presumed as a matter of law, but may be inferred from any facts in evidence which prove the intent to kill, such as the use of a deadly weapon. *Hall v. State,* 418 S.W.2d 810, 812 (Tex.Crim.App.1967). The question is whether a rational trier of fact could have found the intent to kill from the following facts: (1) appellant lured the de-

---

2. On cross-examination, Dr. Salinas testified that "asphyxia by strangulation" was "obvious" and the strangulation was done manually, or by hand.

cedent from her house under the guise that he needed transportation; (2) the two then traveled to a motel and entered a room registered in appellant's name; (3) once there, a heavy piece of furniture was placed in front of the door to block the room's only entrance; (4) a stun gun box was found in appellant's truck and the gun from that box was found in the motel room and used on the decedent; (5) a resident at the motel heard a female scream, "You're going to kill me;" and, (6) the decedent sustained many instances of trauma to her body. When these facts are examined in the light most favorable to the jury's verdict, we find the evidence legally sufficient to prove the intent to kill.

We next consider whether the evidence was sufficient to prove the cause of death was by choking with appellant's hands. When Dr. Salinas's testimony that the decedent's death from asphyxia resulted from strangulation, which could have been caused by a male hand squeezing the decedent's neck, is viewed in the light most favorable to the jury's verdict, we find the evidence legally sufficient to support a rational finding that the decedent died from being choked by appellant's hands.

Further, when all of the evidence is viewed in a neutral light, we find that the jury was rationally justified in finding both the intent and causation elements beyond a reasonable doubt. *Watson*, 204 S.W.3d at 412. In other words, we find no evidence in the record from which we can derive an objective basis that contradicts the jury's verdict. *Id.* at 414.

Accordingly, we hold the evidence is both legally and factually sufficient to prove appellant had the specific intent to cause the decedent's death and that she met her death by choking at the hands of appellant. Having found the evidence sufficient to support the allegations in the first paragraph of the indictment, we need not address appellant's arguments challenging the sufficiency of the evidence to support the allegations in the third paragraph. The first and second points of error are overruled.

## II. The Jury Charge.

The fourth point of error contends the trial judge erred in submitting to the jury the allegations in the second and fourth paragraphs of the indictment. Those paragraphs alleged the manner and means of causing the decedent's death was unknown to the grand jury. At the conclusion of the State's case-in-chief, appellant moved for an instructed verdict of acquittal on these paragraphs, contending there was no evidence to support the allegation that the cause of death was unknown to the grand jury. The trial judge denied those motions. Appellant then objected to the charge authorizing the jury to convict on those allegations. The trial judge overruled the objections, submitted those allegations, and the jury returned a general verdict of guilty.

### A. Authorizing an Improper Conviction.

There are two broad scenarios in which a trial judge commits charge error when authorizing a conviction based upon multiple theories of committing the same offense. *Griffin v. United States*, 502 U.S. 46, 59–60, 112 S.Ct. 466, 116 L.Ed.2d 371. The first scenario arises when the trial judge authorizes the jury to convict under a theory that is not *legally* permissible. For example, in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the defendant was charged in a single count indictment of violating a California statute prohibiting the display of a red flag in a public place for any one of three reasons: (1) as a symbol of opposition to organized government; (2) as an invitation to anarchistic action; or, (3) as

an aid to seditious propaganda. *Id.* at 361, 51 S.Ct. 532. The general verdict permitted the jury to convict if it found the defendant guilty of displaying the flag for any of the three reasons. *Id.* at 363–64, 51 S.Ct. 532. The California appellate court upheld the conviction on the ground that even though the first purpose was unconstitutional, the remaining reasons were constitutional. The *Stromberg* Court disagreed, holding that where the jury was authorized to convict on several theories, but one of those theories was unconstitutional, the jury's verdict must be set aside. *Id.* at 368, 51 S.Ct. 532.

■ This scenario also encompasses cases where the trial judge authorizes the jury to convict on a theory not alleged in the indictment. Stated differently, a trial judge should not permit a jury to convict on a theory not specifically alleged in the charging instrument and, as a corollary, the court should confine the jury to the allegations contained in the indictment. *Castillo v. State*, 7 S.W.3d 253, 258 (Tex. App.-Austin 1999, pet. ref'd) (citing *Emerson v. State*, 54 Tex.Crim. 628, 114 S.W. 834, 835 (1908); and quoting *Moore v. State*, 84 Tex.Crim. 256, 206 S.W. 683, 684 (Tex.Crim.App.1918) ("It is fundamentally wrong to authorize a conviction on any state of facts other than those which support the finding of the truth of the indictment.")). For example, in *Rodriguez v. State*, 18 S.W.3d 228 (Tex.Crim.App.2000), the defendant was charged with driving while intoxicated, "by the reason of the introduction of *alcohol* into his body." [3] *See id.* at 229. Testimony at trial showed the defendant was taking cold medication at the time of the alleged offense. *Id.* The trial judge permitted the jury to convict upon finding the defendant was intoxicated by "*alcohol, a drug, or a combination of both* of those substances, into the body."

*Id.* The Texas Court of Criminal Appeals reversed, holding the trial judge erred in authorizing the jury to base a conviction on a theory of intoxication not alleged in the charging instrument. *Id.* at 232.

■ The second scenario arises when the trial judge authorizes the jury to convict on a theory of conviction that is legally permissible, *but* there is insufficient evidence to support a conviction under that theory. When the evidence is insufficient to support a conviction, the trial judge should eliminate that theory of conviction from the jury's consideration and not include it in the charge. *Griffin*, 502 U.S. at 60, 112 S.Ct. 466; *Payne v. State*, 194 S.W.3d 689, 698 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd). For example, in *Guevara v. State*, 191 S.W.3d 203 (Tex. App.-San Antonio 2005, pet. ref'd), the defendant was charged with murdering his wife. *See id.* at 207–08. The trial judge authorized the jury to convict the defendant under either section 7.02(a)(2) of the penal code, aiding another's commission of the offense, or section 7.02(a)(3), not discharging his legal duty to make a reasonable effort to prevent commission of the offense. *Id.* However, there was no evidence to support the legal duty theory. *Id.* Therefore, the trial judge erred in authorizing a conviction under that theory. *Id.*

In the instant case, the first scenario is not implicated because alleging the manner and means of causing the death is a legal way of charging the offense of murder. *Matson v. State*, 819 S.W.2d 839, 848 (Tex.Crim.App.1991). However, the second scenario is implicated because appellant contends the evidence was insufficient to warrant an instruction authorizing the jury to convict him under that theory. Therefore, we will now determine whether

---

**3.** All emphasis is supplied unless otherwise    indicated.

the trial evidence was sufficient to warrant a charge on the theories alleged in the second and fourth paragraphs of the indictment.

### B.   Alleging Manner and Means Unknown.

Alleging that some aspect of the case is "unknown" is neither new or unique. For example, many theft indictments allege the defendant received stolen property from an "unknown" person. *See, e.g., Payne v. State,* 487 S.W.2d 71, 72 (Tex.Crim.App.1972). In murder cases, the cause of death is usually not in question. However, in cases where the cause of death cannot be conclusively established, it is not uncommon for the indictment to allege a primary cause of death and, in the alternative, to allege that the death was caused by manner and means unknown to the grand jury.

When the indictment alleges the cause of death in this manner, the State bears the burden of proving the "unknown" allegation. The State carries that burden in either of two ways: (1) if the trial testimony does not establish the cause of death, a *prima facie* showing is made that the cause of death was unknown to the grand jury; and (2) when the trial testimony does establish the cause of death, the State must prove that the grand jury used due diligence in attempting to ascertain the cause of death. *Hicks v. State,* 860 S.W.2d 419, 424 (Tex.Crim.App.1993). The burden in the second scenario is usually discharged by calling a member of the grand jury to describe what actions the grand jury undertook to determine the cause of death.

In the instant case, Dr. Salinas testified that the decedent's death was caused either by choking by hand or use of the stun gun. He did not provide any alternate theory or testify that the cause of death was unknown. Therefore, the trial testimony established the cause of death.[4] Consequently, the State was required to prove that the grand jury used due diligence in attempting to ascertain the cause of death. However, the State offered no evidence whatsoever on this subject. Therefore, there was insufficient evidence to support the theories of prosecution alleged in the second and fourth paragraphs of the indictment. *See id.* Consequently, the trial judge erred in authorizing the jury to convict appellant under those theories of prosecution.

### D.   What Type of Harm Analysis is Applicable?

Having found error, we must now determine whether the error was harmful. The State contends the error, if any, is harmless when evaluated under the standard announced in *Malik, infra,* and its progeny dealing with an "unknown" allegation. In *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997), the Texas Court of Criminal Appeals significantly altered the standard of appellate review for sufficiency challenges; *Malik* held that the sufficiency of the evidence is measured by the elements of the offense as defined by the

---

**4.** The State disagrees with this conclusion, arguing the manner and means appellant employed to kill the decedent was not conclusively established and therefore, under *Hicks,* a *prima facie* showing was made that the manner and means was unknown to the grand jury. However, the record evidence does not support this argument. To the contrary, Dr. Salinas repeatedly testified the decedent's death was caused either by choking or the stun gun. The certainty of Dr. Salinas's testimony was referred to by the State in its closing argument: "What you need to understand is that the doctor said it was 95 percent certainty that she died from choking but that there was a slight possibility that she may have died from the stun gun."

hypothetically correct jury charge. *Id.* at 240. Two years later, in *Rosales v. State,* 4 S.W.3d 228, 231 (Tex.Crim.App.1999), the court held that in light of *Malik,* "the rule in cases like *Hicks* is no longer viable." And two years after *Rosales,* the court held a hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances. *Gollihar v. State,* 46 S.W.3d 243, 256 (Tex. Crim.App.2001). A non-essential element allegation, such as an allegation that the object used to cause injury was unknown to the grand jury, may properly be excluded from a hypothetically correct charge. *Id.* at 252–53. In other words, what was considered a material variance in *Hicks* is now an immaterial variance after *Rosales* and *Gollihar* and, therefore, need not be included in a hypothetically correct jury charge. *Gollihar,* 46 S.W.3d at 256. This line of reasoning was followed by this court in *Rose v. State,* 76 S.W.3d 573, 574 (Tex.App.-Corpus Christi 2002, no pet.), and more recently in *In re A.J.G.,* 131 S.W.3d 687, 694 (Tex.App.-Corpus Christi 2004, pet. denied). Indeed, the State cites *A.J.G.* in support of its argument that the instant error was harmless.[5]

Certainly, we acknowledge that the rule in *Hicks* has been altered by *Malik* and its progeny. Nevertheless, we believe the State's reliance on those cases is misplaced because those cases dealt with, and were limited to, the standard of appellate review to be employed when resolving challenges to the sufficiency of the evidence to support the conviction.[6] The *Malik* Court made it clear that its "new rule" was limited to sufficiency challenges and acquittals resulting from such a successful challenge: "[T]he standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than mere error in the jury charge submitted." *Malik,* 953 S.W.2d at 240.

However, in the instant point of error, appellant does not challenge the sufficiency of the evidence to support his conviction on the second and fourth paragraphs of the indictment; rather, that challenge was made in the first and second points of error. Instead, this point raises the issue of jury charge error, which requires a new trial rather than an acquittal. This case is, therefore, indistinguishable from *Guevara,* where the trial court erroneously authorized the jury to convict under penal code section 7.02(a)(3) even though there was no evidence to support that theory of prosecution. *See Guevara,* 191 S.W.3d at 207–08. The Texas Court of Criminal Appeals held that article 36.19 of the code of criminal procedure dictated the appropriate harm analysis. *Guevara v. State,* 152 S.W.3d 45, 54 (Tex.Crim.App.2004). The Court of Criminal Appeals did not rely upon or even cite *Malik* in its opinion because *Malik* has no place in a charge error harm analysis.

---

5. Specifically, the State quotes that opinion, which dealt with a murder prosecution, for the proposition that "The State was under no further obligation to prove that the grand jury used good faith and due diligence in determining the identity of the murder weapon when it produced the disjunctive indictment that described the offense as being committed either 'with a razor blade' or 'with a sharp object to the Grand Jurors unknown.'" *In re A.J.G.,* 131 S.W.3d 687, 695 (Tex.App.-Corpus Christi 2004, pet. denied).

6. For example, in *A.J.G.,* the court specifically stated it was applying *Malik* to the defendant's sufficiency challenge. *In re A.J.G.,* 131 S.W.3d at 694 ("We apply the *Malik* standard of the hypothetically correct jury charge in *sufficiency challenges* to the present appeal despite its nature as a juvenile proceeding."). Accordingly, the quotation from *A.J.G.* relied upon by the State in the preceding was necessarily limited to sufficiency challenges.

Having determined that the appropriate standard for gauging harm is article 36.19, the next issue is what degree of harm is required for reversal. That issue is determined by whether the error was preserved for appellate review. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App.1996). Preserved error warrants reversal if appellant suffered "any harm, regardless of degree." *Id.* (citing *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986)). In the instant case, the error was preserved by appellant's timely objection.

In assessing whether "any harm" had been suffered, the reviewing court may consider 1) the charge, 2) the state of the evidence, including contested issues, 3) the argument of counsel, and 4) any other relevant information revealed by the record. *Hutch*, 922 S.W.2d at 171. We will consider those factors seriatim.

First, the charge authorized the jury to return a general verdict of guilt under the four theories of murder alleged in the indictment; however, two of those theories were not supported by the evidence. The *Hutch* Court found it important that the error, as in this case, occurred in the application paragraph, that portion of the charge which authorizes the jury to act, rather than in some abstract portion of the charge. *Id.* at 172.

The second factor asks if the jury charge error related to a contested issue. *Id.* at 173. The facts recounted in part I, *supra*, establish the state of the evidence-the decedent was killed in a motel room occupied only by herself and appellant. From these facts, it is fair to say that cause of death was the *only* contested issue during trial.[7] From the outset, both lawyers recognized that the cause of death was the critical issue and discussed it during their opening statements. The prosecutor stated:

> When you hear that your decision has to be unanimous, what we're talking about is that he murdered her. That has to be unanimous. How he did it does not have to be unanimous. That's why it's plead in so many different ways. *And if you're just not sure how it happened there is a paragraph for that too. Because the Grand Jurors said it's possible that we don't know what happened, but we do know that he murdered her. We will get into that more in detail when we do the Charge of the Court and this jury can see the charge. You will hear the different language of what you need to select but either way, whether he murdered her with a stun gun, with his bare hands face to face or cold-bloodied killing or someone (sic) that we don't know how he murdered her, the whole point is that he murdered her.*

Defense counsel stated: "The evidence will show that the doctor himself doesn't know what caused the victim's death, but he is speculating by saying she was strangled. . . . In other words, *our position is going to be that the doctor may not know but he is guessing, well, maybe it happened this way, okay.*"

The third factor involves review of the closing arguments. These arguments mirror the opening statements. In his closing argument, the prosecutor stated:

> The second page [the page containing the error] is going to be, I guess, one of the more important pages. Detailing the four individual paragraphs that we

---

7. This conclusion is borne out by the State's closing argument, where the prosecutor stated: "[I]t's become an issue in this case as to how this woman died. I believe defense counsel has made this a very big issue as to how she died and how the doctor reached his conclusion as to what the cause of death was."

set out in discussing with you in the indictment.... That he choked her with his hand. Now, it's become an issue in this case as to how this woman died. I believe defense counsel has made this a very big issue as to how she died and how the doctor reached his conclusion as to what the cause of death was. Now, you heard Doctor Salinas ... talking about the cause of death. That it was asphyxia, in his opinion, by strangulation or which he says is another way of saying choking.

* * * * *

And then the whole X factor in this case was the stun gun. And that's the whole point of pleading in the alternative. That's the way you say it when there is one, two, three, four different versions of how this murder occurred. What you need to understand is that the doctor said it was 95 percent certainty that she died from choking but that there was a slight possibility that she may have died from the stun gun.... 

And the whole point of this is there is the word here, that you will see on page two, "or" by choking, or by being killed by the stun gun *or by some unknown manner that we just don't know.... As I said yesterday* [during his opening statement], *what we need to be is unanimous in that he murdered her. The way it happened does not need to be unanimous. You could have three of you picking each one of these paragraphs. The whole point is that the 12 of you agree that he murdered her. And that's specifically what this language is all about.*

Defense counsel argued as follows:

"[Y]ou remember the testimony of one of [Dr. Salinas'] associates, and that was Mr. Pena, he indicated that the doctor told him, hey, this is a difficult case. I

can't determine the cause of death...." Even Doctor Salinas indicated, when I cross-examined him, that it was very difficult for him in these type of cases to determine the cause of death.

* * * * *

*And there is a question also, in my opinion—in my opinion, as to what is the cause of death.* I really do believe that. And in talking to the doctor yesterday and asking him questions, the doctor did indicate that it was one of the more difficult cases for him. But I think the doctor—in analyzing the whole situation, *I think the doctor at the last minute decided to put the cause of death by strangulation.*

The fourth factor asks us to consider any other relevant information revealed by the record. The most striking revelation is that the charge error wholly undermined the defensive theory, *i.e.,* the State's failure to prove cause of death. Under the erroneous charge, the jury could have rejected Dr. Salinas's conclusions that the decedent died either from choking or the stun gun, thereby accepting the defensive theory that a precise cause of death was not proven, yet was still authorized to convict. In other words, the jury could have taken the position that the cause of death was *not* proven to be either from choking or the stun gun but, having taken that position, the jury would have necessarily found that the manner and means of causing the death was unknown to the grand jury. Consequently, the erroneous charge deprived appellant of the ability to successfully argue his specific defensive theory and deprived the jury of the opportunity to accept and give effect to that argument.

In view of these four factors, each militating toward harming appellant, we find appellant suffered, at a minimum, "some

harm" from the trial judge authorizing the conviction of appellant on theories not supported by the evidence.[8] Accordingly, we sustain the fourth point of error.

The judgment of the trial court is reversed and the case remanded for a new trial.

---

**8.** We say "at a minimum" because the harm in the instant case is as bad as that in *Guevara* which the San Antonio Court found to be egregious. *Guevara,* 191 S.W.3d at 209.