131 S.W.3d 687 (2004)
In the Matter of A.J.G., A Juvenile.
No. 13-03-166-CV.
Court of Appeals of Texas, Corpus Christi-Edinburg.
April 1, 2004.
*690 Joseph A. Connors, III, Attorney At Law, McAllen, for Appellant.
Amy Howell Alaniz, Asst. District Atty., Theodore C. Hake, Asst. Criminal District Atty., Edinburg, for Appellee.
Before Justices YAÑEZ, RODRIGUEZ, and GARZA.

OPINION
Opinion by Justice GARZA.
Appellant, A.J.G., appeals from the judgment of the trial court in a juvenile proceeding. In twenty-five separate issues, appellant contends: (1) the trial court abused its discretion in denying appellant's motion for a new trial; (2) the jury acted arbitrarily and without reference to guiding principles in reaching its verdict; (3) the trial court committed reversible error in allowing the prosecution's closing argument to the jury; (4) there was legally and factually insufficient evidence to demonstrate the grand jury's exercise of due diligence in fashioning the charge; and (5) there was legally and factually insufficient evidence to support the jury verdict. We affirm.

Background
On February 24, 2002, appellant, a 15-year-old-girl, gave birth to a son while in the shower of a bathroom in her parent's home. She had concealed her pregnancy from her family and teachers. Her mother became concerned about the amount of time her daughter had been in the bathroom and forced her way in, where she discovered blood on the walls and floor and her daughter kneeling in the shower. An ambulance was called. Appellant's mother testified that she did not know where the blood had come from, and appellant never indicated to her mother that she had just given birth. The paramedics upon arrival noted that there was a full-term placenta on the floor of the shower, suggesting that appellant may have had a miscarriage, but appellant denied it.
Appellant was taken to a local hospital, where she continued to deny having just given birth. Her mother accompanied her, while her father, who had remained at home, began cleaning up the bloody bathroom. When her mother was told by hospital personnel that appellant had just given birth, she called appellant's father and told him to look for a baby. While talking to his daughter's nurse on the phone, appellant's father found the infant inside a bundle of towels on the top shelf of a linen closet in the bathroom. He called again for an ambulance as the baby was injured and not moving or breathing. The paramedics found that the baby was deeply cut from his mouth to behind the jaw, and they were unable to revive him. At trial, the medical examiner testified that the baby had been born alive but had bled to death due to an extensive incised cut on his mouth inflicted by a sharp object of some kind that had severed major blood vessels. He testified that a razor blade could have inflicted this injury.
Police investigators checked the towels and other items appellant's father had removed from the bathroom while cleaning, including a bloody disposable razor blade, and analyzed the blood splatter in the bathroom. Blood on the bathroom walls and in the shower belonged to the baby, *691 but the blood on the razor blade came from a female.
At trial, appellant testified that she knew she was in labor the day the baby was born. She reported giving birth in the shower with the water running and then attempting to cut the baby's umbilical cord using the razor blade, which she had difficulty accomplishing. She reported being afraid that her parents would hear her. After she cut the cord, she wrapped the baby in some towels and put him in the closet. She testified that she did not know how the baby's cheek was cut and that she failed to tell anyone the baby's location because she was scared.
The grand jury petition charged appellant with engaging in delinquent conduct and separated the charge into the following four alternative sub-issues: with or without specifically identifying the razor blade as the murder weapon; and either with intent to kill or with intent to cause serious bodily injury. After a trial, the jury found appellant guilty of engaging in delinquent conduct by intentionally or knowingly, with intent to cause serious bodily harm, committing an act clearly dangerous to human life, i.e., killing her infant son by cutting him with a sharp object "to the Grand Jurors unknown" while under the age of eighteen. Appellant was sentenced to five years juvenile commitment with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice. This appeal ensued.

Standard of Review
The Texas Family Code places juvenile delinquency proceedings in civil courts but requires their adjudication be based on the standard of proof used in criminal cases. Tex. Fam.Code. Ann. §§ 51.17, 54.03(f) (Vernon Supp.2003). Also, the Texas Supreme Court has held that juvenile delinquency proceedings are "quasi-criminal" in nature and therefore criminal rules of procedure must be looked to for guidance. In re B.L.D. and B.R.D., 113 S.W.3d 340, 351 (Tex.2003). Thus, we apply the standards of review applicable to criminal cases to each of appellant's claims.

Motion for New Trial
In six issues, appellant contends that the trial court abused its discretion by denying her motion for a new trial, thereby depriving appellant of her constitutional due process rights.
Texas Rule of Appellate Procedure 38.1, which establishes the required elements of appellant's brief, notes that a brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(h); see Dail v. Couch, 99 S.W.3d 390, 392-93 (Tex. App.-Corpus Christi 2003, no pet.). If an appellant contends that there has been an abuse of discretion by the trial court, the appellant must demonstrate how the trial court has acted unreasonably or arbitrarily, by misapplying the law or by acting without reference to guiding rules and principles. Dail, 99 S.W.3d at 391 (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985)).
Appellant here failed to include a succinct and clear argument with appropriate citations to authorities as to how the trial court's failure to grant a new trial constituted an abuse of discretion. Instead, appellant implied throughout her brief that because the jury verdict was allegedly reached in error (as she argues more specifically in other issues), the trial court's subsequent refusal to grant the motion for new trial must have been an abuse of discretion. This argument was never made explicit, and there was no specific *692 discussion or citation to previous case-law on the abuse of discretion standard.
We conclude below that we will not sustain any of appellant's other issues raised on appeal. As appellant has violated Texas Rule of Appellate Procedure 38.1 by failing to make additional arguments regarding this alleged abuse of discretion, we hold appellant has waived her challenge to the trial court's denial of her motion for a new trial. See Tex.R.App. P. 38.1.

Jury Reasonableness
By one issue, appellant argues that the jury acted arbitrarily and without reference to guiding rules and principles in finding that appellant engaged in delinquent conduct by committing the offense of murder.
The language appellant employs to present this issue, i.e., "arbitrarily and without reference to guiding rules and principles," reflects the legal standard used to determine whether a trial court, not a jury, has engaged in an abuse of discretion. Dail, 99 S.W.3d at 391. Juries are not held to an abuse of discretion standard and do not have to consider guiding rules of legal authority when making their factual findings. Instead, jury verdicts are only set aside if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.1997); Contreras v. State, 54 S.W.3d 898, 903 (Tex.App.-Corpus Christi 2001, no pet.). Jury verdicts are entitled to great deference and may only be overturned on appeal if they are found to lack any rational relationship to the evidence presented. Cain, 958 S.W.2d at 407; Muniz v. State, 851 S.W.2d 238, 246 (Tex.Crim.App.1993).
We will review the jury verdict below for factual and legal sufficiency, which ensures that the verdict will be set aside if found to be manifestly unjust or clearly erroneous. However, we will not review here the jury verdict under an abuse of discretion standard, as appellant suggests, as that is the incorrect standard of review. Accordingly, appellant's issue is overruled.

Prosecutor's Closing Argument
By one issue, appellant argues that the trial court committed reversible error when it allowed the prosecutor to tell the jury during closing arguments, "You are the voice of the community. You are going to decide by your verdict here what message you're going to send to the community."
Arguments by counsel that inflame the prejudices of the jury or ask that the jury convict or punish based on public sentiment or community outrage are considered a violation of the constitutional guarantees to a fair trial. Cortez v. State, 683 S.W.2d 419, 420-21 (Tex.Crim.App. 1984). Remarks to the jury must fall within one of four categories in order to be considered proper: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the arguments of opposing counsel; or (4) a plea for law enforcement. Cannady v. State, 11 S.W.3d 205, 213 (Tex.Crim.App.2000); see In the Matter of S.E.R., No. 13-97-911-CV, 1999 Tex.App. LEXIS 8481, at * 21 (Corpus Christi Nov. 10, 1999, no pet.) (not designated for publication) (applying the standard of review for evaluating improper jury arguments in adult criminal trials to juvenile adjudication proceedings). An argument, even if couched in terms of a call for law enforcement, is improperly presented to the jury if it induces jurors to reach a particular verdict based upon the demands, desires or expectations of the community, rather than on the evidence. *693 Borjan v. State, 787 S.W.2d 53, 56 (Tex. Crim.App.1990).
However, the prosecution only commits reversible error when instructing the jury to convict because of or based on community desires. The prosecution may properly remind the jury that it is representative of its community and that its decision can and should reflect that community's desire for strong law enforcement. See, e.g., Goocher v. State, 633 S.W.2d 860, 864 (Tex.Crim.App.1982) (allowing the prosecution to say: "send these types of people a message to tell them we're not tolerating this type of behavior in our county"); Davila v. State, 952 S.W.2d 872, 879 (Tex.App.-Corpus Christi 1997, pet. ref'd) (allowing the statement: "If you don't convict this man for murder, people in the Valley are going to think that they can carry a gun and shoot people in cars"); Lawson v. State, 896 S.W.2d 828, 833 (Tex.App.-Corpus Christi 1995, writ ref'd) (allowing the statement: "I ask [you to] send a very strong message to this man and everyone else in this community ... who thinks it's okay to get out there and poison the community.").
Closing arguments do not constitute reversible error unless they are grossly improper, violative of a mandatory statute or add new facts harmful to the accused. Goocher, 633 S.W.2d at 864. So long as the prosecution does not urge the jury to abandon the rule of law and make its decision based on what the community would like, pleas to the jury that it act as the voice of its community and "send a message" are not improper. Id.; Goff v. State, 794 S.W.2d 126, 127-28 (Tex.App.-Austin 1990, pet. ref'd).
Appellant asserts here that the trial court erred in overruling her objections to the State's closing argument. Specifically, appellant objected to the following statements: "You are the voice of the community. You are going to decide by your verdict here what message you're going to send to the community;"and "Your verdict will send a message.... Your verdict is going to send a message folks, and the question is what message is that verdict going to send."
The State's closing statements clearly fall within the allowable "plea for law enforcement" category of argument. See Goocher, 633 S.W.2d at 864; Lawson, 896 S.W.2d at 833. The statements about "being a voice" and "sending a message" did not pressure the jury to reach a guilty verdict based upon the demands, desires or expectations of the community and abandon consideration of the evidence. There was no implication that the community demanded a guilty verdict and the jurors had to acquiesce to these demands. Rather, the jury was asked to instruct or guide the community by its decision. Such argument is proper and accordingly, appellant's issue is overruled.

Due Diligence by the Grand Jury
By four issues, appellant complains that there was legally and factually insufficient evidence presented by the State to demonstrate that the grand jury exercised due diligence in determining for purposes of the indictment that the weapon was "a sharp object to the Grand Jurors unknown." The indictment was presented in the disjunctive and charged appellant with causing the death of her son with "a razor" or "with a sharp object to the Grand Jurors unknown." The jury actually convicted based on the latter description of the weapon used.
The original standard for a proper indictment, which appellant urges this Court to adopt for juvenile proceedings, was established in Hicks v. State, 860 S.W.2d 419, *694 424 (Tex.Crim.App.1993) (citations omitted):
When an indictment alleges that the manner and means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury. However, if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the weapon used.
Id. The State could satisfy this due diligence requirement through testimony by a grand juror that the grand jury was unable to find out what object caused the injuries. Rosales v. State, 4 S.W.3d 228, 231 (Tex.Crim.App.1999).
However, as pointed out in Rosales, "the rule in cases like Hicks is no longer viable in light of our decision in Malik." 4 S.W.3d at 231. The decision in Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.App.1997) changed the analysis so that the indictment as presented is not the basis by which the sufficiency of the evidence is measured. Instead, sufficiency of the evidence is now measured by the elements of the offense as defined by the "hypothetically correct jury charge for the case." Id. at 240. The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense. Id.; see Adi v. State, 94 S.W.3d 124, 130 (Tex.App.-Corpus Christi 2002, pet. ref'd).
The hypothetically correct jury charge, so long as it conforms to the Malik requirements, can be presented in the disjunctive, giving the jury mutually exclusive alternatives as to how the offense may have been committed. Kitchens v. State, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); Mendez v. State, 716 S.W.2d 712, 713 (Tex. App.-Corpus Christi 1986, pet. ref'd). For example, the jury charge can allege that a murder was committed by shooting the victim with a handgun or by strangling the victim, during the commission of robbery or sexual assault. Kitchens, 823 S.W.2d at 257, n. 2. Also, a non-essential element of the charge, such as an allegation that the object used to cause injury was unknown to the grand jury, may properly be excluded from a hypothetically correct jury charge. Rose v. State, 76 S.W.3d 573, 574 (Tex.App.-Corpus Christi 2002, no pet.); see Gollihar v. State, 46 S.W.3d 243, 253 (Tex.Crim.App.2001). So long as the essential elements of the crime with which the defendant has been charged have to be found by the jury in order for a guilty verdict to be returned, the State does not have to additionally and separately prove the good faith and due diligence of the grand jury in determining non-essential elements of the charge. See Malik, 953 S.W.2d at 240; Fagan v. State, 89 S.W.3d 245, 249 (Tex.App.-Texarkana 2002, pet. ref'd) ("the rule requiring the state to show that the grand jury exercised due diligence in determining the instrumentality of the offense is no longer relevant to our analysis.").
We apply the Malik standard of the hypothetically correct jury charge in sufficiency challenges to the present appeal despite its nature as a juvenile proceeding.[1] As stated above, the criminal *695 rules of procedure are utilized by civil courts in juvenile proceedings because of their serious, quasi-criminal nature. In re B.L.D. and B.R.D., 113 S.W.3d at 351. Additionally, many of the due process protections applicable to criminal trials also apply fully to juvenile proceedings, including the right to appeal. Tex. Fam.Code Ann. art. 56.01(d) (Vernon 2002); In re M.S., 940 S.W.2d 789, 790 (Tex.App.-Austin 1997, no pet.).
In a hypothetically correct jury charge for the crime of murder, the exact identification of the weapon used is unnecessary. Rather, the necessary elements are established by the Texas Penal Code: "A person commits murder if he: (1) intentionally or knowingly causes the death of an individual; (or)(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Pen.Code Ann. § 19.02 (Vernon 2003). The State was required to prove beyond a reasonable doubt that appellant either intentionally caused the death of her son or intentionally caused serious bodily injury while committing a dangerous act. The State was under no further obligation to prove that the grand jury used good faith and due diligence in determining the identity of the murder weapon when it produced the disjunctive indictment that described the offense as being committed either "with a razor blade" or "with a sharp object to the Grand Jurors unknown." Rosales, 4 S.W.3d at 231. To require otherwise would unnecessarily increase the State's burden of proof, in violation of the standard established in Malik. See Malik, 953 S.W.2d at 240. Therefore, appellant's issues regarding the exercise of due diligence by the grand jury are overruled.

Legal and Factual Sufficiency
In thirteen issues, appellant contends that the evidence presented at trial was legally and factually insufficient to support the jury's verdict. The standard of review for legal sufficiency in criminal cases is set out in Jackson v. Virginia, 443 U.S. 307, 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a legal sufficiency analysis, this Court must view the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Clewis v. State, 922 S.W.2d 126, 132-33 (Tex.Crim.App.1996); see In re L.R., 67 S.W.3d 332, 338 (Tex.App.-El Paso 2001, no pet.) (applying the Jackson standard to serious juvenile cases where criminal elements must be proven beyond a reasonable doubt). Thus, the question on appeal is whether evidence that proved the essential elements of the crime *696 charged was presented at trial. Sufficiency of the evidence is measured against the elements of the offense as defined by the hypothetically correct jury charge for the case. Malik, 953 S.W.2d at 240. Here, the State had to prove beyond a reasonable doubt that appellant intentionally caused the death of her son or intentionally caused him serious bodily injury while committing an act clearly dangerous to human life. Intent may be inferred through circumstantial evidence, including the accused's acts, words and conduct. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim.App.1982); In re V.M.D., 974 S.W.2d 332, 347 (Tex. App.-San Antonio 1998, pet. denied).
The jury was presented with evidence that confirmed all the elements of this charge, including testimony by a medical examiner regarding the cause of death by a severe cut to the face and subsequent blood loss. Testimony by all witnesses revealed that no one other than appellant saw, had access to, or even knew about the existence of the infant until he was found by appellant's father and turned over to paramedics. Intent was established through testimony by appellant and her friends and family which revealed appellant knew she was pregnant, consistently concealed and denied both her pregnancy and labor, hid the newborn in a linen closet wrapped inside a towel, and refused to admit to her family, paramedics at the scene, or medical personnel at the hospital that she had just given birth to a live infant or where she had subsequently placed that infant. Only a medical examination revealed that she had recently given birth; appellant continued to deny the fact until the baby was actually found by her father. Appellant also admitted at trial to holding a razor blade in one hand and the baby in the other while attempting to sever the umbilical cord from the infant's body. Moreover, she failed to express sorrow or remorse for the lost life of her child. Viewing these facts in a light most favorable to the verdict, it does not appear unreasonable that a fair and rational fact-finder could have used this evidence to infer appellant possessed the requisite intent and to establish guilt beyond a reasonable doubt. Jackson, 443 U.S. at 318-319, 99 S.Ct. 2781. Thus, the verdict was indeed supported by legally sufficient evidence.
In a factual sufficiency analysis, all of the evidence, whether favorable to the prosecution or not, is considered by the appellate court in a neutral light. Clewis, 922 S.W.2d at 129; In re C.P., 998 S.W.2d 703, 708 (Tex.App.-Waco 1999, no pet.) (applying the Clewis factual sufficiency standards to a juvenile proceeding). The court will then determine whether the verdict, in consideration of all available evidence, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust such that fairness demands the verdict be overturned. Clewis, 922 S.W.2d at 129; Rojas v. State, 986 S.W.2d 241, 247 (Tex.Crim.App.1998). However, the court must be carefully deferential to the existing verdict in a factual sufficiency review, in order to avoid substituting its judgment for that of the jury, which maintains its role as fact-finder and evaluator of the weight and credibility of witness testimony. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).
Appellant argues that the State could not conclusively prove that the razor blade found at the scene was the murder weapon, as blood on the razor did not match that of the newborn. Appellant also argues that the wounding of the infant occurred accidentally when she attempted to remove his umbilical cord, and thus, the requisite element of intent could not be conclusively established beyond a reasonable *697 doubt. For these reasons, appellant contends the evidence was factually insufficient to support the jury's verdict.
The failure of the State to conclusively establish that the razor found was, in fact, the murder weapon does not affect the overall verdict, as discussed above. Using the hypothetically correct jury charge as our barometer against which the sufficiency of the evidence is measured, the State did not have to prove that the razor was the specific weapon used; it was sufficient for the State to prove that a sharp object was used and that only appellant had the opportunity to use such an object, whatever it may have been, on the infant.
The accidental-wounding defense, appellant argues, is supported by the fact that appellant was alone at the time her son was born, she was in a running shower surrounded by water and blood, and she was inexperienced in matters of childbirth. However, the evidence also established that appellant deliberately concealed her pregnancy, that she hid herself and kept completely silent while giving birth in the bathroom while her entire family was in the house, and that once the baby had been injured, she did not attempt to seek help as he bled to death. Rather, she hid the child and denied his very existence. Intent may be inferred from the actions or conduct of appellant, and intent to kill or seriously injure may be inferred from the use of a deadly weapon. See Davila, 952 S.W.2d at 875. The jury could reasonably infer from both the circumstances surrounding the infant's death and appellant's testimony regarding using the razor to slice the umbilical cord and placing the baby in the linen closet that the appellant intended to continue her pattern of concealment to ensure that the baby would not be heard or seen even after it was born, and that she therefore silenced and hid the child. The exact nature of the sharp object used was never established, but it was nonetheless clear from the testimony of the medical examiner that some kind of deadly weapon was in fact used. While the evidence may have been insufficient to prove that she possessed an intent to kill her son, it did demonstrate that she knowingly caused serious injury to the newborn which ultimately caused his death, both through her actions in inflicting the cut and her concealment of the dying child.
The jury responded to the evidence presented in a reasonable way, as can be inferred by its failure to convict on either of the alternative charges in which the weapon was referred to as the razor blade found at the crime scene, or in which appellant was specifically described as acting with intent to kill. The State could not prove either element beyond a reasonable doubt. However, for the hypothetically correct jury charge for murder as authorized by the indictment, all of the essential elements were proved beyond a reasonable doubt. The weight of all evidence to the contrary does not demonstrate any clear error or manifest injustice and therefore cannot overcome the reasonableness of the jury verdict in relation to the evidence. The verdict was supported by factually sufficient evidence. Therefore, we decline to set aside the verdict, and appellant's issues are overruled.
As all twenty-five issues raised on appeal have been considered and overruled by this Court, we accordingly AFFIRM the judgment of the trial court.
NOTES
[1] Even if the Hicks standard was adopted for juvenile proceedings as urged by appellant, it would not necessarily support appellant's argument. The Hicks standard requires that the State prove the grand jury used due diligence in attempting to ascertain the weapon's identity only if the evidence at trial shows what object was used. Hicks, 860 S.W.2d at 424. Here, there is an argument that the object was unknown. There was clearly a wound inflicted on the infant by a sharp object of some kind, and the only such object recovered by the police was the razor blade. However, as indicated by the jury verdict, the evidence at trial did not prove that the razor was the weapon used. The blood on the razor was not that of the victim, despite the fact that his blood was found on the walls and floor of the bathroom. Appellant's father had cleaned up the bathroom ostensibly before he realized that it was the scene of a crime; the weapon may have been moved, discarded or otherwise lost. Finally, appellant concealed her child to the extent that her father did not discover him until he conducted a thorough search of the bathroom; conceivably, appellant could also have concealed or removed the weapon. Thus, the State's evidence did not prove at trial that the razor was the object used to inflict the injury, and therefore, even under the Hicks standard, the State was not required to prove that the grand jury used due diligence in attempting to ascertain the weapon used when it produced an indictment that referred to the weapon as "unknown."