

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

PD-0961-07

ORLANDO SANCHEZ, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 13-03-698-CR of the
Thirteenth Court of Appeals,
Hidalgo County

WOMACK, J., delivered the opinion of the Court, in which PRICE, JOHNSON,
KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., concurred
in the judgment. MEYERS, J., did not participate.

The issues in this case arise from an indictment's allegation that a murder was committed

by a "manner and means to the grand jury unknown."

One issue is whether the court's charge that contained such language was in error when

there was a question whether the manner and means was actually unknown. In deciding this

issue, we must address whether *Hicks v. State*,[1] the case upon which the Court of Appeals relied, is both applicable and controlling for "unknown" allegations. We decide that the *Hicks* rule is no longer viable.

Another issue is whether an error involving such a "manner and means to the grand jury unknown" allegation requires reversal when it affected two of four alternative theories presented in the jury charge.

We find error in the jury charge, which we hold to have been harmless. We reverse the judgment of the Court of Appeals and affirm the judgment of the trial court.

## I. Background

## A. Summary of Facts

Two guests in a motel room heard a woman screaming in an adjoining room and called the police. When two police officers arrived on the scene, they heard a stun gun go off inside the room in which the woman had screamed. The officers immediately entered the room and discovered the appellant, Orlando Sanchez, lying next to the dead body of his girlfriend. She was naked. Her neck and face were bruised, and there were distinctive marks of a stun gun on the skin of her neck and chest. Police found a stun gun in the room and recovered its box from inside a cowboy hat in the appellant's truck, which was parked in front of the room. The windows in the room were painted shut, and the only door to the room was barricaded by a piece of furniture. Both the room and the truck were registered in the appellant's name.

---

[1] *Hicks v. State*, 860 S.W.2d 419, 424 (Tex. Cr. App. 1993).

B. Indictment

The appellant was indicted for murder. In four disjunctive paragraphs, the indictment alleged the appellant did then and there:

(1) "intentionally and knowingly cause the death of [the victim] by choking her with his hand;"

(2) "intentionally and knowingly cause the death of [the victim] by manner and means to the Grand Jurors unknown;"

(3) "with intent to cause serious bodily injury to an individual . . . commit an act clearly dangerous to human life, to-wit: by placing a stun gun on the person of the said [victim], that caused the death of said [victim];" and

(4) "with intent to cause serious bodily injury to [the victim], commit an act clearly dangerous to human life, to-wit: by manner and means to the Grand Juror[s] unknown, that caused the death of said [victim]."

C. Evidence of Manner and Means

At trial, Dr. Fulgencio Salinas was the only medical expert to testify. He had written "asphyxia by strangulation" on the autopsy report under cause of death, and he testified that the cause of the victim's death was asphyxia – the lack of oxygen to the brain.

There was some confusion in terminology. Dr. Salinas repeatedly stated that the cause of death was "asphyxia." However, he also noted that he could not conclusively determine what caused that asphyxia: manual strangulation or the stun gun.

The appellant argued that Dr. Salinas could not determine the cause of death. The State argued that he could determine the cause of death – simply not what caused that cause of death.

There was much disagreement about whether Dr. Salinas knew or did not know what "killed" the victim. Instead of differentiating "cause of death" from "manner and means" of death, both sides focused on what "actually kill[ed]" the victim and how she died, making it unclear whether they were pointing to a medical reason or a murder weapon.

Dr. Salinas testified:

> The cause of death in this individual is asphyxia. And I think it's asphyxia by strangulation.

> \* \* \*

> So anytime you apply pressure here in this particular region and squeeze – that's all you need to do. Just squeeze in this area because the vessels that take blood up [to] the brain are located right there. They are very superficial and rather easy to squeeze and to block the oxygen going to the brain. You can also do another thing. You can also cover their mouth and their nose. It happens in babies a lot. And that's another way you can cause asphyxia. So there [are] several mechanisms – in fact several ways of doing asphyxia strangulation. Those are the main ones . . . . But all the things I found were consistent with an asphyxia by strangulation.
> Okay. First of all, the cause of death is by asphyxia . . . the strangulation comes in later.

> [STATE]: You mean by hand – strangulation by hand – or by choking?

> [WITNESS]: By hand or by the arm. . . . Sometimes you can do it this way. Sometimes you can do it by putting this around them like this. So there [are] several ways of strangling somebody. . . . I said by the hand because that's usually the most common thing that happens.
> My conclusion, once again, is asphyxia. That's the main thing, asphyxia. The lack of oxygen to the brain that kills the person. Whether it was caused by strangulation or caused by stun gun I'm not 100 percent sure which one did it but the cause of death is asphyxia.
> She probably died of asphyxia. She died of asphyxia and I think it was by strangulation. . . . And maybe the stun gun had something to do with it. . . . I'm not sure if the stun gun actually killed her. . . . But I know she died of asphyxia by strangulation and the stun gun was used."

D. Jury Charge

The jury was charged in the disjunctive, with the same four alternative methods of murder that the indictment alleged. The appellant objected to the two "manner and means unknown" theories because the allegations were unsupported by the evidence presented at trial and were thus based on insufficient evidence to convict. The trial court overruled the objection.

The appellant was convicted of murder and sentenced to sixty-eight years in prison.

II. Court of Appeals

On appeal to the Thirteenth Court of Appeals, the appellant raised four points of error. The first two challenged the legal and factual sufficiency of the evidence to support the jury's verdict of guilty. The Court of Appeals held that, as to the first of the four alternative theories, the evidence was "both legally and factually sufficient to prove appellant had the specific intent to cause the decedent's death and that she met her death by choking at the hands of appellant."[2] The sufficiency of evidence to convict has not been made an issue for discretionary review.

The appellant argued, in his fourth point of error, that the trial court erred in submitting to the jury the allegations in the second and fourth paragraphs of the indictment – the "unknown" manner and means paragraphs. In its discussion on jury-charge error, the Court of Appeals stated, "There are two broad scenarios in which a trial judge commits charge error when authorizing a conviction based upon multiple theories of committing the same offense."[3] It cited *Griffin* for the rule that charge error exists when "the trial judge authorizes the jury to convict on a theory of conviction that is legally permissible, *but* there is insufficient evidence to support a conviction

---

[2] *Sanchez v. State*, 221 S.W.3d 769, 774 (Tex. App.–Corpus Christi 2007).

[3] *Id.*, at 774, citing *Griffin v United States*, 502 U.S. 46, 59-60 (1991).

under that theory."[4] In determining whether the trial evidence was sufficient to warrant a charge on the "unknown" theories, the Court relied on the rule stated in *Hicks v. State* that when an unknown allegation is made in an indictment, the burden falls to the State either to present a *prima facie* case at trial that the manner and means were actually unknown, or to prove (usually by testimony) that the grand jury used due diligence to ascertain the manner and means of death.[5] The appellant argued that the manner and means the appellant employed were not actually unknown, and that the jury charge was erroneous in authorizing conviction on such a theory. The State, however, argued that a *prima facie* case was made that the manner and means were indeed unknown – since only the cause of death was known – and thus the charge was not erroneous.

The Court of Appeals agreed with the appellant and found that the trial court erred when it submitted the alternative methods of murder to the jury. The Court held that the manner and means of death had been established at trial, and thus, the two "manner and means unknown to the grand jury" paragraphs were erroneously included. Relying on *Hicks,* the Court held that since the State failed to prove either prong of the *Hicks* test, then there was insufficient evidence to submit the "manner and means unknown to the grand jury" theories to the jury.

---

[4] *Id.*, at 775, citing *Griffin*, 502 U.S., at 60 (emphasis in original).

[5] *Hicks*, 860 S.W.2d, at 424 ("When an indictment alleges that the manner or means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury. *Matson v State,* 819 S.W.2d 839, 847 (Tex. Cr. App. 1991). However, if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the weapon used.").

The Court found that the appellant suffered "some harm"[6] as a result and reversed the conviction. The Court relied on *Hutch v. State* in assessing whether "any harm"[7] had been suffered, and considered "1) the charge itself; 2) the state of the evidence, including contested issues and the weight of the probative evidence; 3) arguments of counsel; and, 4) any other relevant information revealed by the record of the trial as a whole."[8]

The common denominator in applying the four *Hutch* factors to the facts was the cause of death. The State stressed that while unanimity is required to prove that the appellant murdered the victim, *how* he did so need not require unanimity. The defense protested that Dr. Salinas was unsure of the cause of death and was "speculating by saying she was strangled."

We granted the State's petition for review on four grounds.[9] The first three pertain to the "manner and means unknown" charge and its applicable law, questioning the efficacy of *Hicks*. The fourth pertains to harm suffered by the appellant as a result of the erroneous jury charge.

---

[6] See *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Cr. App. 1984).

[7] *Hutch v. State,* 922 S.W.2d 166, 170-71 (Tex. Cr. App. 1996), citing *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Cr. App. 1986).

[8] *Hutch,* 922 S.W.2d, at 171.

[9] "(1) Does a trial court commit error by instructing the jury on the State's alternat[iv]e theory of murder by a 'manner and means to the grand jury unknown' where the sole medical expert testified repeatedly that he could not determine the exact manner and means of death by asphyxiation? (2) When assessing charge error, is a court of appeals free to reweigh and reinterpret the evidence adduced at trial? (3) May an appellate court use the *Hicks* rule to evaluate whether a 'manner and means unknown to the grand jury' theory was properly submitted to the jury and, if so, has the Thirteenth Court of Appeals applied the rule correctly? (4) In the alternative, can an erroneously submitted alternat[iv]e theory be harmful when the reviewing court finds the evidence sufficient to support the conviction under another submitted theory?"

### III. The *Hicks* Rule

We begin with the third ground for review to determine whether *Hicks* is the controlling case in dealing with charge errors that stem from indictments which allege "unknown" manner and means. The State questions both the use of the *Hicks* rule to evaluate unknown manner and means, and the Court of Appeals' application of it. The appellant argues that the *Hicks* rule is still viable.

### A. *Hicks* and its progeny

In *Hicks*, this Court held that "when an indictment alleges that the manner or means of inflicting the injury is unknown"[10] the burden falls to the State either to present a *prima facie* case that the evidence was unknown to the grand jury, or to "incur… the additional burden of showing that the grand jury used due diligence in trying to determine same."[11]

In *Rosales v. State*, this Court declared that "the rule in cases like *Hicks* is no longer viable in light of our decision in *Malik*,"[12] a case in which we held that "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."[13]

While the majority of the courts of appeals follow *Rosales* and *Malik* in citing *Hicks* as the former, "disavowed" rule,[14] others do not have such clear holdings.[15] Even a few opinions

---

[10] *Hicks*, 860 S.W.2d, at 424; *see also Matson*, 819 S.W.2d, at 847.

[11] *Ex parte Coleman*, 940 S.W.2d 96, 98 n.1 (Tex. Cr. App. 1996).

[12] *Rosales*, 4 S.W.3d, at 231.

[13] *Malik v. State*, 953 S.W.2d, 234, 240 (Tex. Cr. App. 1997).

[14] *See generally Bermudez v. State*, No. 13-05-246-CR, 2007 Tex. App. LEXIS 2809 (Tex. App.–Corpus Christi 2007) ("The court of criminal appeals, however, has expressly disavowed the 'due diligence' rule cited by appellant"); *Fagan v. State*, 89 S.W.3d 245, 249 (Tex. App.–Texarkana 2002) ("[T]he rule has lost its underpinning

from this Court have continued to discuss *Malik* and *Hicks* together, suggesting that *Malik* might take the place of *Hicks*.[16] *Planter v. State*[17] discussed both cases when analyzing variances between indictments and jury charges, while *Gollihar*[18] expressly modified *Malik's* holding, citing *Hicks* in its analysis. While neither case expressly overrules *Hicks* on its face as *Rosales* does, they both defer to case law stating that *Hicks* is indeed outdated without specifying a reason.

Although we said in *Rosales* that *Hicks* is no longer viable because of *Malik*, we can also say that it is no longer viable for reasons not stated in *Malik*.[19] *Hicks* and its progeny are not simply about sufficiency of the evidence; they are about *notice*.[20] Their basis is the premise that defendants should not be surprised at trial by evidence without having had the time to properly prepare a defense, nor should "unknown" allegations be used by the State as a substitute for full

---

as well as any reason for its existence"). While several of these cases are unpublished, we cite *Bermudez* for the limited purpose of illustrating that most courts of appeals that cite *Hicks* are unpublished opinions, but do still follow the *Rosales* and *Malik* line of cases which declare *Hicks* as "no longer viable."

[15] *Compare In re A. J. G.*, 131 S.W.3d 687, 694 (Tex. App.–Corpus Christi 2004) (which holds that the "due diligence" standard of *Hicks* was replaced by the "hypothetically correct jury charge" standard of *Malik*), *with Allen v. State*, 149 S.W.3d 254, 257 (Tex. App.–Fort Worth 2004), *Rose v. State,* 76 S.W.3d 573, 575 (Tex. App.–Corpus Christi 2002)*, and Richards v. State*, 54 S.W.3d 348, 350 (Tex. App.–Houston 2001).

[16] *Planter v. State*, 9 S.W.3d 156, 161 (Tex. Cr. App. 1999)(McCormick, J., dissenting); *Gollihar v. State*, 46 S.W.3d 243, 252-53 (Tex. Cr. App. 2001).

[17] *Planter*, 9 S.W.3d, at 161.

[18] *Gollihar*, 46 S.W.3d, at 252-53.

[19] Judge Meyers points out in his concurring opinion to *Rosales* that the statement regarding the *Hicks* rule as being "no longer viable in light of our decision in *Malik*" is mere dicta because the issue in *Malik* was resolved on earlier grounds. *Rosales*, 4 S.W.3d, at 234 (Meyers, J., concurring), citin*g Brabson v. State*, 976 S.W.2d 182, 186 (Tex. Cr. App. 1998).

[20] "The grand jury's failure to determine the manner and means must be pled in the indictment in order to give notice to the defendant." *Garrett v. State*, 682 S.W.2d 301, 308 (Tex. Cr. App. 1984).

investigation, or as an adversarial ploy, or to avoid the requirement of indictment by a grand jury.[21]

However, this rule, which began as a guide for "unknown" manner and means in indictments, has morphed into a rule that can affect jury charges and assessments of sufficiency of evidence (including variances and hypothetically correct jury charges). The rule seems to have lost both its intent and its focus, and as a result it easily can be misunderstood and misapplied.

### B. Application

In this case, the point of error at the appellate level was jury-charge error and not sufficiency of evidence.[22]While the Court of Appeals was correct in attempting to distinguish *Hicks* based on sufficiency of evidence, *Hicks* and its progeny have provided such nebulous guidance that the Court misplaced its reliance on the rule.

Even if the Court had properly relied on *Hicks*, it misapplied the rule. When the Court of Appeals stated that the State must prove the "unknown" allegation by making a *prima facie* showing that "the cause of death was unknown to the grand jury," it analyzed the wrong evidence.[23]

In *Hicks*, the appellant was indicted for capital murder for causing the death of the decedent by beating and striking her with a blunt instrument in the course of committing a sexual

---

[21] See TEX. CONST. art. I, § 10 ("[N]o person shall be held to answer for a criminal offense unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary …").

[22] On direct appeal, the appellant did raise separate sufficiency of evidence points of error, which were rejected by the Thirteenth Court of Appeals.

[23] *Sanchez,* 221 S.W.3d, at 776.

assault.[24] What was "unknown" in that case was the actual murder weapon, or the "instrument of death,"[25] which was the "manner and means." The medical expert in *Hicks* testified that, although the victim's injuries were consistent with her being struck with a hammer, there was no way to say conclusively that the hammer was the murder weapon.[26]

In the instant case, the Court of Appeals, perhaps observing factual similarities between the two cases, inappropriately applied *Hicks* to the "cause of death." Because the "unknown" allegation was the "manner and means" and not the "cause of death," the Court erred in its analysis.

*Hicks'* requirement of proving "unknownness" of an allegation achieves nothing. If one purpose of the rule is truly to give the defendant notice before trial, requiring proof of the "unknownness" of an allegation after the trial has begun – and it no longer possible to give timely notice – is "close to bizarre."[27]

While *Rosales* does inform us that *Hicks* is no longer viable because of *Malik*, we also have found that it is no longer viable for reasons not expressly stated in *Malik*.[28]

---

[24] *Hicks,* 860 S.W.2d, at 421.

[25] *Id.*, at 424.

[26] *Id.*, at 425.

[27] *Rosales,* 4 S.W.3d, at 236 (Womack, J., concurring) ("Our past requirement that this allegation be proved at trial is not justified. The only substantial rights of the defendant that could be denied by such an allegation are the rights to indictment by a grand jury in a felony case and to notice of the nature and cause of the accusation. These are requirement for the State's pleading, which are appropriately raised and decided before trial. The remedy for the grand jury's lack of diligence in discovering and alleging the means of committing the offense would be to sustain an exception to the indictment. The notion that this allegation creates an issue of fact to be proved to the trial jury is close to bizarre.").

[28] Judge Meyers pointed out in his concurring opinion to *Rosales* that the statement regarding the *Hicks* rule as being "no longer viable in light of our decision in *Malik*" was mere dicta because the issue in *Malik* was resolved on earlier grounds. *Rosales*, 4 S.W.3d, at 234 (Meyers, J., concurring), citin*g Brabson v. State*, 976 S.W.2d 182, 186 (Tex. Cr. App. 1998).

We also observe that, if another purpose of the rule is obedience to the Texas Constitution's requirement that "no person shall be held to answer" a charge of felony without indictment by a grand jury,[29] a rule that postpones the "unknowness" inquiry until the trial is ineffective.

Thus, we overrule the two-pronged rule in *Hicks* and announce a new standard for indictments with "unknown" allegations to the grand jury that are subsequently used as the jury charge at trial:

Where the State has alleged "unknown" manner and means in the indictment and/or jury charge, the defendant may challenge the propriety of the "unknown" allegation before trial and (if the evidence at trial has made a second inquiry necessary)at the conclusion of evidence, but before the charge is submitted to the jury.

The first question (whether raised before or during the trial) is whether the defendant was given proper *notice* so that he could properly prepare for trial. The second question is whether an "unknown" allegation in the indictment should be replaced by language in the charge that requires a particular fact to be found in order to convict.

The pre-trial hearing will ensure that the "unknown" allegation was truly unknown to the grand jury and is not being used to surprise or manipulate the defendant at trial. This hearing replaces the *Hicks* test, but does not require proof of "unknownness" at trial. Instead, it permits hearings that will, at the very least, elicit all evidence that is now known so that the "unknown" aspect of the case can be minimized or eliminated by amendment of the indictment or the presentation of a superseding indictment.

---

[29] See n. 21, *supra.*

Similarly, a post-evidentiary hearing is available to the defendant by request after the evidence has been presented and both sides have rested, but before the jury is charged. If the "unknown" allegation has become known through the evidence presented at trial, it might still have been unknown to the grand jury as stated in the indictment. If this is the case, then the "unknown" allegation has since been discovered and made known. This additional hearing will force both sides to revisit the "unknown" allegation from the indictment, and clarify that it is either known, "unknown," or unknowable, before the court completes its charge to the jury.

Our opinion should not be read to restrict or alter the use of the "unknown" allegation in an indictment. This new standard merely provides the opportunity to avoid confusion and error in the jury charge with respect to unknown allegations.

We wish to note that an error or failure to provide a hearing will not entitle the appellant to an acquittal.[30] The remedy would be a new trial.

## IV. Discussion of Jury Charge

### A. Was There Error?

In its first ground for review, the State argues that the trial court did not err when it instructed the jury on the State's alternative theory of murder by a "manner and means to the grand jury unknown," because the medical expert testified that he could not determine the exact manner and means of death by asphyxiation. The appellant argues that because the expert testified that the decedent died from asphyxia by either the stun gun or strangulation, then the cause of death was known and that submitting the charge to the jury was in error. In its second

---

[30] *Malik,* 953 S.W.2d, at 240. ("[A] judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted.").

ground for review, the State questions the ability and authority of a court of appeals to "reweigh and reinterpret the evidence adduced at trial." In another ground for review, the State argues that an erroneously submitted alternate theory is not harmful when the reviewing court finds the evidence sufficient to support a conviction under another submitted theory.

In the trial court and the Court of Appeals, the terms "cause of death" and "manner and means" of death were sometimes used interchangeably in discussions of how the victim was killed. This can confuse the issues. Further confusion can result from the terms' different meanings in medicine and law.

In medicine, every death is in one of four "manners": natural, accidental, homicidal, or suicidal.[31] Only in deaths that are not natural – that is, accidents, homicides, and suicides – is the "means" of death an issue.[32]

These terms may appear in law. For example, Article 49.04(a) of the Code of Criminal Procedure requires a justice of the peace to conduct an inquest into a death if:

> (2) the person dies an *unnatural* death from a *cause* other than a legal execution;
> (3) the body or a body part of a person is found [and] the *cause* or circumstances of death are unknown …;
> (4) the circumstances of the death indicate that the death may have been *caused* by unlawful *means*;
> (5) the person commits *suicide* or the circumstances of the death indicate that the death may have been caused by *suicide*; [or]
> …
> (6) the person dies while attended by a physician who is unable to certify the *cause* of death and who requests the justice of the peace to conduct an inquest …."

---

[31] Harris County Medical Examiner's Office, "Information: Manner of Death" (undated). *See* National Association of Medical Examiners and The College of American Pathologists, "Medical-Legal Death Investigation and Autopsy" (2003) (defining "Manner of Death" as "The circumstance surrounding a death, such as: natural, accident, suicide, homicide, undetermined, or pending.").

[32] *See id.*

The use of the term "manner of death" is not the same in the criminal procedure of this state as it is in medicine.

### 1. "Manner and Means"

In the criminal law, the term "manner and means" refers to the *actus reus* – the voluntary engaging in conduct – "including an act, or omission, or possession."[33] "The use of the prepositional word 'by' in either a statute or an indictment is a tip-off that probably . . . the phrase will be a description of *how* the offense was committed."[34] In other words, the "manner and means" is the act that leads to the medical determination of "cause of death." Thus, "[g]enerally, adverbial phrases, introduced by the preposition 'by,' describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous."[35]

The manner and means of death may also include the weapon that is "the instrumentality . . . responsible for the deceased's death."[36] Neither the manner – the *actus reus* – nor the means – the "instrument of death"[37] – need be found unanimously by a jury.[38]

---

[33] PENAL CODE § 6.01(a).

[34] *Jefferson v. State*, 189 S.W.3d 305, 315 (Tex. Cr. App. 2006) (Cochran, J. concurring) (emphasis added).

[35] *Id.*, at 316.

[36] *Hicks,* 860 S.W.2d, at 425.

[37] *Id.,* at 424.

[38] *See Schad v. Arizona,* 501 U.S. 624, 111 (1991)*; Jefferson,* 189 S.W.3d, at 315; *Ngo v. State,* 175 S.W.3d 738, 746 (Tex. Cr. App. 2005); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Cr. App. 1991).

## 2. "Unknown" Allegations

Indictments may allege that a fact is "unknown." The fact may later become known, which might require an indictment to be amended. However, in a jury charge, "manner and means to the grand jury unknown" may be either *unknown* evidence, or *unknowable* evidence. Some opinions have been unclear in how to approach these cases."[39]

"Unknown" evidence is evidence that cannot be or has not yet been ascertained, such as a murder weapon or perhaps even the cause of death. "Unknowable" evidence, however, differs from the failure to find evidence. It is evidence that has been ascertained, but cannot be comprehensively known. In essence, it is the difference between an open-ended question and a multiple-choice question which gives several options to the finder of fact. When all evidence that can be produced is produced, but it is impossible to determine manner and means, then the manner and means is "unknowable."

## 3. Application

In this case, we have both an indictment and a jury charge with "manner and means unknown" allegations. At trial, the State and the appellant argued over "what killed" the victim: asphyxia, strangulation, choking, or the stun gun. The State argued that the cause of death was asphyxia, through the testimony of Dr. Salinas, while the appellant argued that it was strangulation or the stun gun.

Based on Dr. Salinas's testimony and the aforementioned definitions, the cause of death is known as asphyxia, but the "manner and means" that caused the asphyxia appears to be what is

---

[39] *See generally Sanchez,* 221 S.W.3d 769 (Tex. App. - Corpus Christi 2007, pet. dism'd). This court's unpublished opinion in *Barbee v. State,* 2008 Tex. Crim. App. LEXIS 900 (slip op. at 15) is an example of the term "unknown" being interpreted in different ways.

"unknown." Where the Court of Appeals erred in this case was in its interpretations of the "unknown" allegations: "cause of death" or "manner and means" of death. We believe that Dr. Salinas's testimony expressly said that the cause of death was asphyxia, but what caused the asphyxia was at issue. It could have been manual strangulation, ligature strangulation, blocking the air passages, or the use of the stun gun, or even any combination of these methods. The evidence does not show definitely that the victim died either by choking or by stun gun, as the Court of Appeals found. Instead, the evidence shows that the victim died by asphyxia (loss of oxygen to the brain) and that the cause of that asphyxia was "unknown." Since "cause of death" is a medical term, the State need not prove that the appellant "asphyxiated" the victim. Rather, the State must prove the legal element of the crime, which is that the appellant caused the death of the victim. And when Dr. Salinas testified, "I know she died of asphyxia by strangulation and the stun gun was used," he confirmed that cause of death. He did not confirm the "manner and means" of death, or in other words, what *caused* the cause of death. The "manner and means" was either *by* strangulation or *by* the stun gun, or even *by* a combination of the two.[40] Both "strangulation" and "the stun gun" are mentioned after the preposition "by," which indicates that they are the manner and means that is the issue for the jury.[41]

Having decided that it is the manner and means of death that is in question, we must next determine if the manner and means were unknown or unknowable. There would be an inherently unknowable aspect to this case if all the relevant evidence was presented. Based on the record

---

[40] It is of concern to the Court that neither the indictment nor the jury charge lists manual strangulation, ligature strangulation, use of a stun gun, or a combination of strangulation *and* the use of a stun gun as potential manner and means of death. Since these are the only options by which the asphyxia could have occurred under these facts, the jury charge could have been amended and no error would have resulted.

[41] *See Jefferson*, 189 S.W.3d, at 316.

and the testimony of Dr. Salinas, we understand that it is not possible to conclusively determine the manner and means of the asphyxia. According to the testimony, it is possible that strangulation alone, the stun gun alone, or the combination of the two were sufficient to kill an individual.

Dr. Salinas testified:

The main thing with these stun guns – the theory behind them is that they will release a very powerful amount of electricity in voltage and this type of voltage will cause paralysis of the muscles and you can't move. In theory it sounds great. There is one problem with voltage and – it can stop your heart and it can stop your breathing, you know, if that happens and such voltage is kind of high. There is something that is very important as far as electricity and that's amperage. And amperage and voltage go along together. You see, if you have very high voltage – like this one is 200,000 volts according to the thing here. And yet you have a very low amperage – amperage is current passing through – that's allowed to pass through. And what stops and what gives you good amperage is your skin. So anytime you have skin that is nice and flat and dry, you have very low amperage. But if you place one of these things with very high voltage and an individual who is standing in water or has water or has a break in the skin by whatever mechanism, then that gives you a very high amperage. So if you break the skin, you've got a problem with electricity. It's going to pass through and it's going to kill you. There is a possibility that this may have happened in this particular case. It might be a problem – if it stops your heart and lungs then you end up with asphyxia. So regardless you're going to die of asphyxia whether it's by strangulation or by this – by this apparatus. It's still asphyxia.

There was no lack of evidence presented at trial, nor a lack of diligence on the part of the grand jury to ascertain the evidence. All evidence was presented that could have been presented. We are not saying that the manner and means were known; rather that they were not entirely unknown. Thus, we do not have unknown manner and means. Rather, we have *unknowable* manner and means – a known choice of several options as opposed to no evidence and no options.

Since there was no failure to find evidence, and since the evidence presented a choice of several options to prove manner and means, then the cause of death was, at worst, merely "unknowable," and the jury charge should have been amended to give the jury a choice to find one or several of the possible causes – or, of course, to find that the evidence was insufficient to prove the cause of death.

The jury charge was erroneous because the indictment contained an allegation of "manner and means to the grand jury unknown," when the manner and means were not truly unknown.

We next must determine whether the error harmed the appellant.

### 4. Harmless Error Analysis

#### A. Settled Law

Unobjected-to error in the charge will not result in a reversal "unless it was so egregious and created such harm that [the] appellant was denied a fair trial."[42] "The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[43] The appellant must have suffered actual, rather than theoretical, harm.[44] If an error is preserved with a timely objection, then the result would be a reversal if the appellant suffered "some harm" as a result of the error.[45]

---

[42] *Almanza*, 686 S.W.2d, at 171.

[43] *Id.*; *see also* CODE CRIM. PROC. art. 36.19.

[44] *Arline*, 721 S.W.2d, at 352.

[45] *Almanza*, 686 S.W.2d, at 171.

If no objection was timely made at trial, then an appellant must claim that the error rose to "egregious harm," in order to obtain a reversal.[46]

When looking at harmless error in a jury charge with alternative theories, we also look to *Atkinson v. State,* which measures the harm "at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge."[47] "[T]he presence of overwhelming evidence of guilt plays a determinative role in resolving the issue," and is indeed a factor that can be considered when looking at jury charge error.[48]

When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands "if the evidence is sufficient to support a finding under any of the theories submitted."[49] If the evidence is sufficient to support a finding of guilt based on at least one of the alternative theories, the verdict stands.[50] Thus, even if one of the alternative theories was erroneously submitted to the jury, a conviction may still stand if found under another submitted theory.

## B. Application

The Court of Appeals did not analyze harm under *Almanza* and *Atkinson* and thus erred in its analysis.

---

[46] *Id.*

[47] *Atkinson v. State,* 923 S.W.2d 21, 27 (Tex. Cr. App. 1996), overruled on other grounds by *Motilla v State,* 78 S.W.3d 352 (Tex. Cr. App. 2002).

[48] *Harris v. State*, 790 S.W.2d 585, 587 (Tex. Cr. App. 1989).

[49] *Kitchens v. State*, 823 S.W.2d 256, 258-59 (Tex. Cr. App. 1991).

[50] *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Cr. App. 1999); *Kitchens*, 823 S.W.2d, at 258-59.

The Court relied on *Hutch v. State*, which did not address a situation in which alternative theories of culpability were submitted. Rather, *Hutch* applied an *Almanza* harm analysis to a jury instruction regarding police testimony in an illegal search and seizure case.[51] In *Hutch,* a police officer stopped a vehicle because he claimed neither the driver nor the passenger were wearing seatbelts. When the passenger leaned forward, dropping an object on the floor, the officer discovered cocaine.[52] Applying Article 38.23 of the Code of Criminal Procedure, the trial court instructed the jury that if they believed that the appellant was *not* wearing a seatbelt, then the detention was unlawful, and then they must disregard the officer's testimony.[53] This Court held that "a defendant is entitled to be convicted upon a correct statement of the law. In the instant case, the erroneous instructions had the effect of instructing the jury on the *opposite* of what the law actually is."[54]

*Hutch* is distinguishable from the case at bar for several reasons. First, the charge in this case did not instruct the jury on the "opposite" of what the law is; it should have simply been omitted or clarified. Additionally, in *Hutch*, the erroneous charge instructed the jury on law that was simply wrong.

In this case, the erroneous jury charge has no impact on the outcome because there is sufficient evidence based on one of the theories to allow the verdict to stand.[55] Secondly, the

---

[51] *Hutch,* 922 S.W.2d, at 172.

[52] *Id.*, at 169.

[53] *Id.*

[54] *Id.,* at 174, emphasis added.

[55] *See Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Cr. App. 1999); *Kitchens*, 823 S.W.2d, at 258-59.

*Hutch* jury charge instructed the jury to "ignore the police officer's testimony."[56] In the case at bar, there is no charge to ignore any testimony. Third, the standards in analyzing harmless error are different. *Hutch* was using an "egregious harm" standard for errors that have not been properly preserved at trial, while in the case at bar, we apply the *Almanza* standard of "some harm"[57] for preserved error. And fourth, and most importantly, the charge in *Hutch* did not deal with alternate theories of prosecution, where at least one theory provides sufficient evidence to convict, which is true in the instant case.[58]

In the instant case, the Court of Appeals erroneously applied a *Hutch* harm analysis, considering "other relevant information revealed by the record," and focused on the theory that "the charge error wholly undermined the defensive theory, *i.e.* the State's failure to prove cause of death."[59] This is another area where the Court of Appeals erred. The State did prove cause of death, but not "manner and means" of death, and thus the Court of Appeals misinterpreted the evidence, not only in its charge analysis, but also in its harm analysis.

Based on the record and the rules dictated in *Almanza* and *Atkinson*, we believe that the evidence presented did not result in "actual harm" to the appellant.[60] The evidence was sufficient to convict based on one of the alternate theories in the jury charge other than "unknown" manner and means. The medical expert testified that he was 95 percent sure that the asphyxia was the

---

[56] *Hutch,* 922 S.W.2d, at 172.

[57] *Almanza*, 686 S.W.2d, at, 171

[58] *Rosales*, 4 S.W.3d, at 231; *Kitchens*, 823 S.W.2d, at 258-59.

[59] *Sanchez*, 221 S.W.3d, at 779.

[60] *Arline*, 721 S.W.2d, at 348.

result of manual strangulation. Because the appellant was found lying next to the decedent in a motel room registered under his name, with his truck parked in front of the room, and there were no alternative means of entering or exiting the room, the evidence is overwhelmingly in support of a conviction – regardless of the charge expressing some "manner and means unknown to the grand jury." Counsel did not focus on the "manner and means unknown" argument during the trial, thus diffusing its impact on this review. Instead, counsel confused the evidence with respect to "cause of death" and "manner and means" of death, thus arguing that "cause of death" was the unknown aspect of the case. As previously stated, this is a misinterpretation of the evidence. Based on the jury charge, it was the manner and means that were unknown – not the cause of death. Since we have already held that the manner and means were "unknowable," then the jury charge was in error. Since the evidence is sufficient to support a finding of guilt based on at least one of the alternate theories, the verdict stands.[61]

## V. Conclusion

In viewing the record as a whole, we find the charge error harmless in nature. We vacate the judgment of the Court of Appeals and affirm the judgment of the trial court.

Delivered October 6, 2010.
Publish.

---

[61] *Rosales*, 4 S.W.3d, at 231; *Kitchens*, 823 S.W.2d, at 258-59.